## BERNARD CORRIGAN et al., Appellants, v. KANSAS CITY and J. SCOTT HARRISON.

### In Banc, May 13, 1908.

1. **TAXATION: Assessment for Parks.** An assessment under the charter of Kansas City, upon the lands of a defined district, for establishing and maintaining a park, is in no sense a general tax for general revenue purposes; if a legal tax at all, it is a special tax for local improvements.

2. **BENEFIT ASSESSMENT: All Real Estate: Omission of Churches and Railroads.** The charter provided that "the real estate, exclusive of the improvements thereon, in each park district, may be assessed annually" for the establishment and maintenance of a city park, and the ordinance imposed a uniform tax of two and one-half mills on all real estate in the district, exclusive of improvements, except the city, church and railroad property, and that exception was made by the language of the ordinance which said that the assessment was to be on all real estate, exclusive of improvements, "as shown by the tax books of the city assessor for the assessment of real estate in said district made for general city purposes in said city"—the city assessor's books showing no assessment against churches, city or railroad property. *Held*, that the assessment was not invalid because the property of the city, churches and railroads was not included. The charter does not require all real estate in the district to be assessed.

   *Held*, by **WOODSON, J.**, in a dissenting opinion, in which **BURGESS** and **GRAVES, JJ.**, concur, that the words "the real estate in said park district," used in the charter, mean all the real estate therein, and the ordinance, in exempting the lands owned by churches, railroads, and the city, did not harmonize with the charter, and the assessment is therefore void.

3. **———: ———: ———: Assessments Against Railroads.** The lands of railroads within the park district, if benefited, may be charged with their proportionate share of the cost of establishing and maintaining the park; but where the city council, by its ordinance apportioning the benefit assessments, omitted such lands, it will be held that, in the estimation of the council, they were not benefited by the improvement, and for that reason were omitted.

   *Held*, by **WOODSON, J.**, dissenting, that the mere fact that the lands were situated within the benefit district, is conclusive of the fact that they were benefited by the public park.

4. ——: ——: ——: **Exemptions.** Section 3 of article 10 of the Constitution, requiring taxes to be made uniform, and sections 6 and 7 of the same article, the one exempting properties of certain kinds and the other forbidding any other exemptions, refer only to general taxes. They neither exempt nor forbid the exemption of properties from special assessments for local improvements.

> *Held*, by **WOODSON, J.**, dissenting, that the mere fact that land is situated in the benefit district is conclusive of the fact that it is benefited by the park improvement; and for the Common Council, by ordinance, to charge two-thirds of the land with the improvement and to exempt the other third, is an unwarranted discrimination, is unjust and high-handed, and is contrary to any just scheme of taxation. The charter did not confer on the Common Council the power to exempt from benefit assessments property benefited equally with other property, and thereby increase the burden of taxation upon other property charged with the improvement.

5. ——: ——: ——: **Arbitrary Classification: Equal Protection of the Laws.** The legislative department of the city government cannot make an arbitrary selection of property to be taxed for the benefit of a whole district, omitting other property of like kind and used for like purposes. But where all the properties of the same class are taxed, and all properties of other classes, such as all churches, city or railroad properties, are omitted from the assessment, there is no such arbitrary classification or inequality as makes the whole assessment invalid. The council has the power, as much as a freeholder's jury, of determining whether or not certain properties are benefited by the improvement.

> *Held*, by **WOODSON, J.**, dissenting, that a classification of property cannot be based on ownership, and that to exempt land owned by a church or railroad or charitable organization from the burden of the benefit assessment, and to impose the special tax on other lands owned by another corporation or association or individual, is to create an arbitrary and not a natural class, and is unjust discrimination, and denies to citizens within the district equal protection of the laws, contrary to the Fourteenth Amendment.

6. ——: **No Improvement: Injunction.** The assessment for the establishment and maintenance of a park is not void on the ground that at the time it was made there was no park in the district, if the evidence shows that the city had laid out two large parks, and was using all its energies in pushing for-

211 Sup.—39

ward the litigation required for the accomplishment of its un-
dertaking, and the money that the assessment will raise will
be needed for establishing the park.

7. ———: **Improvement: Lack of Specifications and Details.** The
language of the ordinance, that "the special assessments hereby
levied shall be used for the purpose of maintaining, adorn-
ing, constructing, repairing and otherwise improving the parks,
parkways, roads, boulevards or avenues, or portions thereof,"
was not so general, indefinite, and uncertain as to make
the special tax bills void; especially, where no showing is made
that it could be made more definite and certain without impair-
ing the necessary powers of the park board or involving it in
a wilderness of detail.

8. ———: **Without Benefits.** An *ad valorem* area assessment for
a park does not so ignore the question of benefits conferred as
to render the assessment void.

9. ———: **Notice: Due Process of Law.** An assessment of an *ad
valorem* tax upon the real estate of the district, exclusive of im-
provements, upon a valuation shown by the assessor's books,
by the city council, without notice to the property-owners, is
not invalid, and does not deprive them of their property with-
out due process of law. No notice is necessary in such case.

Appeal from Jackson Circuit Court.—*Hon. Edward P.
Gates*, Judge.

AFFIRMED.

*Warner, Dean, McLeod, Holden & Timmonds* for
appellants.

(1) Considered as a general tax, or tax for gen-
eral purposes, this levy is void: 1. Because the city
levy of 10 mills on each dollar of the assessed valuation
"for general purposes," which was duly paid by plain-
tiffs, was the maximum of the constitutional limit;
and this additional levy of two and a half mills on the
dollar is in excess of that limit. Constitution, art. 10,
sec. 11. 2. Because the rate is not the same in all the
park districts; therefore, it is violative of section 3,
article 10, of said Constitution, which provides that
taxes "shall be uniform upon the same class of subjects

within the territorial limits of the authority levying the tax.'' 3. Because the division of the city into park districts for taxing purposes is void. Morgan v. Comptroller, 44 N. J. L. 572. 4. Because levied on one kind of property only, viz., real estate, exclusive of buildings and improvements, thereby exempting all other kinds of property, in violation of section 7, article 10, of said Constitution. 5. Because the answer alleges that this tax ''is a special assessment, levied for local purposes, and is legally and properly levied for a purpose for which local and special assessments can be legally levied;'' and it is on that ground that defendants seek to uphold its validity. (2) Ordinance number 9674 is void, because in conflict with section 33, article 10, of the charter. By comparison, it will be seen that the charter provides for the assessment of all the real estate, exclusive of improvements thereon, in the park district; while the ordinance does not include or cover all the real estate in the park district. It omits and exempts all real estate which is not ''liable for taxation for state and county purposes,'' and it omits and exempts all real estate not ''shown by the books of the city assessor for the assessment of real estate in said West Park District made for general city purposes in said year.'' By reference to the 3rd paragraph of the agreed statement of facts, it will be seen that in West Park District there are 55 parcels of land, aggregating 37 acres, mostly belonging to churches, charitable institutions, Kansas City school district, etc., one parcel described as being Kansas City engine house, and two parcels described as belonging to Kansas City—none of which is ''charged with any state, county or general city tax for said year, because exempt from the payment of such taxes, and on all of which no park maintenance tax was levied.'' By reference to the 4th paragraph of said agreed statement, it will be seen that there are various parcels of land in West Park District,

which "are owned by various railroad companies, the most of them being used for track and depot purposes, and some of them for shop and roundhouse purposes." These railroad lands "amount in the aggregate to 200 acres." These railroad lands "do not appear on the assessment roll, because assessed by the State Board of Equalization. And they are not charged with any local park maintenance tax." So that while the charter requires that all the real estate, exclusive of improvements thereon, shall bear this local assessment, the ordinance omits and exempts therefrom all real estate not "liable for taxation for state and county purposes," which exemption, as shown in said agreed statement, covers 55 parcels of land, containing in the aggregate 37 acres. No other real estate is to be charged with said assessment. This provision omits and exempts 200 acres of lands belonging to various railroad companies. The charter and ordinances of a city stand in the same relation to each other as the Constitution and statutes of a state. Quinette v. St. Louis, 76 Mo. 402. And the ordinances must be consistent with the charter. Kansas City v. Hallett, 59 Mo. App. 160. That church property and property used for charitable purposes are subject to local assessments, though exempt from general taxation, has been settled in this State. Sheehan v. Hospital, 50 Mo. 155. And railroad property is also subject to local assessments. State ex rel. v. City of Kansas, 89 Mo. 34. And so are railroad rights of way subject to local assessments. Elliott on Roads, 403; Railroad v. Decatur, 147 U. S. 190, 126 Ill. 92; Railroad v. Moline, 159 Ill. 64; Railroad v. Kankakee, 164 Ill. 608. The arbitrary exclusion, or exemption, of these properties amounts to oppression on the owners of the property assessed, and avoids the assessment. Scammon v. Chicago, 42 Ill. 192; Chicago v. Baer, 41 Ill. 306; Parmelee v. Chicago, 60 Ill. 267; Dyer v. Harrison, 63 Cal. 447. (3) This assessment is void, because there

was no park, parkway, or boulevard in that district on which this fund could be lawfully expended. The theory underlying these local assessments is mutuality—a. *quid pro quo;* and yet here is a case in which the city is. undertaking to levy a local assessment to raise a fund: for the purposes of maintaining, etc., a four-acre tract, called a park, which the city "reserves the right at any time, by ordinance, to use for other purposes or to sell' or dispose of." In other words, the city .proposes to. assess the real estate in West Park District to raise: a fund "for the purposes of maintaining, adorning, constructing, repairing and otherwise improving" a four-acre tract of land, called a park, which it may at any time use for city hall, market, water works, jail or other purpose, or which it may at any time sell to any person or corporation, and be used for brick yards, slaughter houses, packing houses, churches, schools, railroad depots or roundhouses, stores, warehouses, cold storage plants, hotels, private residences, or anything else.   Furthermore, the only other so-called park in that district is a parcel of land consisting of one-tenth of an acre—a tract about 65 feet square, which has never been placed under the control of the park board. Now, turning to section 6, article 10, of the charter, it will be seen that the park board only has control of such parks, parkways and boulevards as may, by ordinance, be placed under their control and management.   Again, section 33, article 10, of the charter authorizes an assessment of this kind only for maintaining, etc., parks, parkways, etc., "which are under the control and management of the board of park commissioners."   So we have an ordinance passed April 21, 1898, levying this assessment for the purpose of maintaining, etc., parks, parkways, etc., when the record shows conclusively that there was no park, parkway or boulevard in that district under the control or management of such board, except the four acres above referred to; and the city

has reserved the right to use that for other purposes or to sell it. Hansen v. Omaha, 11 Neb. 37; Leach v. Cargill, 60 Mo. 316; Guinotte v. Egelhoof, 64 Mo. App. 356; Kirksville v. Coleman, 103 Mo. App. 215. (4) Ordinance No. 9674 is void, because it omits and exempts many parcels of land from the assessment. Childers v. Holmes, 95 Mo. App. 154. The city has no right, power or authority to exempt property from either general taxes or special assessments. Vrana v. St. Louis, 164 Mo. 146; State v. Railroad, 75 Mo. 208; St. Louis v. Meier, 77 Mo. 13; 25 Am. and Eng. Ency. Law, 1193; Dillon, Mun. Corp. (4 Ed.), sec. 781; Cooley on Taxation (2 Ed.), 200, 215; Beach on Pub. Corp. sec. 1443; Elliott on Roads and Streets, 377. Where lands liable to assessment are not assessed, and the whole expense of the improvement is assessed on the remaining property, the assessment is void. Gray's Limitation of Taxing Power, sec. 1902; 25 Am. and Eng. Ency. Law, 1199; People v. Lynch, 51 Cal. 15; Chicago v. Cummings, 144 Ill. 446; Kizer v. Winchester, 141 Ind. 694; State v. Union, 53 N. J. L. 67; People v. Buffalo, 159 N. Y. 571; Huntington v. Cincinnati, 3 Ohio Dec. 126; Masters v. Portland, 24 Ore. 161; Scranton v. Levers, 200 Pa. St. 56; Savage v. Buffalo, 131 N. Y. 568. (5) The ordinance is void, because the purposes for which the assessment is made are too general, indefinite and uncertain. Wells v. City of Weston, 22 Mo. 384; Chouteau v. Leffingwell, 54 Mo. 467; Orphan Asylum Appeal, 11 Pa. St. 135; Chicago v. Blair, 149 Ill. 310. Ordinances levying local assessments must be specific as to the improvements to be made; otherwise, they will be held void. Sheehan v. Gleeson, 46 Mo. 100; Haegele v. Mallinckrodt, 46 Mo. 577; Moran v. Lindell, 52 Mo. 229; Independence v. Gates, 110 Mo. 374; Construction Co. v. Loevy, 64 Mo. App. 430; State v. Hoboken, 47 N. J. L. 268. An ordinance which simply authorizes an improvement, without furnishing any

directions as to the manner in which or materials with which the same shall be done, is void. Haegele v. Mallinckrodt, 46 Mo. 577; Rich Hill v. Donnan, 82 Mo. App. 386. This ordinance provides for doing many things; and an ordinance which provides for several improvements under one assessment, will be held void. 25 Am. and Eng. Ency. Law, 1213, 1214; Dyer v. Chase, 52 Cal. 440; Adams Co. v. Quincy, 130 Ill. 566; Mendenhall v. Clugish, 84 Ind. 94; Dickinson v. Worcester, 138 Mass. 555; People v. Yonkers, 39 Barb. 266; Wilbur v. Springfield, 123 Ill. 295; State v. Hoboken, 47 N. J. L. 268; People v. Ladd, 47 Cal. 603; Randolph v. Gawley, 47 Cal. 458; People v. Clark, 47 Cal. 456. (6) The ordinance is void because it wholly ignores and disregards the question of benefits. The territory or district covered by this levy is about three miles in length and from one and a fourth to one and a half miles in width; and contains store-houses, warehouses, private residences, manufacturing plants and industries, freight and passenger depots, railroad yards, grounds and rights of way, stockyards and stockyard pens, sheds and buildings, packing houses, hotels, churches, school houses and hospitals. It is perfectly apparent that, with this vast territory, in a populous city, where the various parcels of land therein are devoted to such diversity of uses and purposes as above mentioned, they could not all be benefited according to any uniform scale or rule (many could not be benefited at all) and that any attempt to levy upon all alike a uniform *ad valorem* tax must be in utter disregard of any special benefits to accrue to the respective tracts burdened with the special assessment. And such practice, when once upheld by the courts, leaves no tax limit, nor any safeguard, for the protection of property from such an abuse of the taxing power. A special or local assessment is a burden imposed by law upon real property for a public improvement, the extent of the burden be-

ing determined by the special benefits which inure to the assessed property by reason of the improvement. 25 Am. and Eng. Ency. Law, 1168; Cooley on Taxation, p. 428; McCormack v. Patchin, 53 Mo. 36; Halpin v. Campbell, 71 Mo. 453; Corrigan v. Gage, 68 Mo. 541. There being a total failure to exercise the judgment of the board in determining the benefits, the assessment was void. Watkins v. Zweitisch, 47 Wis. 513; Johnson v. Milwaukee, 40 Wis. 315; Watkins v. Milwaukee, 52 Wis. 98. Where the rule is according to superficial area, it is not just or valid that property slightly benefited is charged equally with property greatly benefited. Thomas v. Gain, 35 Mich. 162; Seeley v. Pittsburg, 82 Pa. St. 360; Preston v. Rudd, 84 Ky. 150; Washington Ave. case, 69 Pa. St. 352; Orphan Asylum Appeal, 111 Pa. 135; Wistar v. Philadelphia, 111 Pa. St. 614; State v. Fuller, 39 N. J. L. 576; Hansen v. Omaha, 11 Neb. 37; Chamberlin v. Cleveland, 34 Ohio St. 551; 2 Dillon, p. 920, note; Morse v. Westport, 136 Mo. 287; St. Louis v. Weber, 44 Mo. 547; Cape Girardeau v. Riley, 72 Mo. 224; Tarkio v. Cook, 120 Mo. 8; Copeland v. St. Joseph, 126 Mo. 431; St. Louis v. Russell, 116 Mo. 258; Kelly v. Meeks, 87 Mo. 401. (7) This assessment is void, because no provisions were made for notice to owners of property, nor were they given any opportunity to be heard. 1 Abbott, Mun. Corp. sec. 363; 32 Am. & Eng. Corp. Cases, 234; Paulsen v. Portland, 149 U. S. 36; Fay v. Springfield, 94 Fed. 409; Norwood v. Baker, 172 U. S. 269. Where an assessment is to be made of benefits property owners have an absolute right to be heard, and a law for making it without provision for a hearing is void. Cooley on Constitutional Limitations, p. 622, note; Stewart v. Palmer, 74 N. Y. 183; Baltimore v. Sharf, 54 Md. 499; Davidson v. New Orleans, 96 U. S. 97; Waples on Proceedings in Rem, 64; Philadelphia v. Miller, 49 Pa. St. 440; Stewart v. Trevor, 56 Pa. St. 374; Butler v. Supervisors of Saginaw, 26

Mich. 22; Thomas v. Gain, 35 Mich. 115; Cleghorn v. Postelwait, 33 Ill. 428; Darling v. Gunn, 50 Ill. 422. (8) This assessment scheme is one to avoid the constitutional limitation as to the annual rate of taxation. Hansen v. Omaha, 13 Neb. 37; Cooley on Taxation, p. 456. And this is a judicial question. Wells v. City of Weston, 22 Mo. 384; Chouteau v. Leffingwell, 54 Mo. 469; Orphan Asylum Appeal, 111 Pa. St. 135. (9) Ordinance No. 9674 is void, because it violates the 14th amendment of the Federal Constitution. Giozza v. Tiernan, 148 U. S. 657; Yick Wo v. Hopkins, 118 U. S. 356; Railroad v. Chicago, 166 U. S. 234.

*Edwin C. Meservey, Wm. A. Knotts* and *D. J. Haff* for respondents.

(1) The charter is in entire harmony with the laws and Constitution of the State of Missouri, and is not in conflict therewith. Kansas City v. Ward, 134 Mo. 172; Kansas City v. Marsh Oil Co., 140 Mo. 458; Kansas City v. Langston (North Terrace case), 147 Mo. 259; Kansas City v. Bacon (Penn Valley case), 157 Mo. 450; Egyptian Levee Co. v. Hardin, 27 Mo. 495; Levee Co. v. Meier, 39 Mo. 53; Morrison v. Morey, 146 Mo. 565; Land Co. v. Miller, 170 Mo. 240; State v. Drainage Dist., 192 Mo. 519; R. S. 1889, sec. 6674; R. S. 1899, secs. 8201, 8437; Hanson v. Hammer, 15 Wash. 319; Hagar v. Reclamation Dist., 111 U. S. 701; Irrigation Dist. v. Bradley, 164 U. S. 112. (2) The provisions of the Constitution of the State regulating taxation, cited by plaintiffs in their petition, do not apply to special assessments, or special taxes, levied upon real estate, the proceeds of which are to be used for betterments and improvements which will be beneficial to the property paying the assessment. Farrar v. St. Louis, 80 Mo. 387; City to use v. Owen, 110 Mo. 453; City of Clinton v. Henry County, 115 Mo. 565; Lamar W. & E. L. Co. v. Lamar, 128 Mo. 218. (3) But plain-

tiffs argue that the method pursued by the city council in making this assessment was unconstitutional on the alleged ground that the assessment was an *ad valorem* one upon the property assessed. The argument amounts to this, that the assessment of benefits must not be levied ratably in proportion to the value of the property assessed, even though the benefits accrue that way; that simply because the *ad valorem* method is the one pursued in general taxation, an *ad valorem* assessment must necessarily be a general and not a special tax. Here was a charter provision directly authorizing, in fact, not only authorizing, but arbitrarily providing, that the assessment of benefits shall be levied in proportion to the value of the property, in other words an *ad valorem* assessment levied in the same way that a general tax is levied. This charter provision was declared to be constitutional and equitable. Garrett v. St. Louis, 25 Mo. 510; K. C. Grading Co. v. Holden, 107 Mo. 310. The *ad valorem* method of making special assessments is no longer open to question in this State. Morrison v. Morey, 146 Mo. 565; Meier v. St. Louis, 180 Mo. 391. In some states the assessments for paving streets are levied in proportion to the value of the property as determined by the city assessor. Boehme v. City of Monroe, 106 Mich. 401. In some states, notably in Kansas, the method of levying assessments to pay for sewers is in proportion to the value of the lands taxed, without the improvements thereon, instead of the area rule. Douglas v. Craig, 4 Kan. App. 99. The *ad valorem* method of assessing benefits for public improvements is the one adopted in many important states of the Union, and uniformly upheld by the decision of the courts. I know of no decision to the contrary. Dorgan v. Boston, 12 Allen (Mass.) 223; Springfield v. Gay, 12 Allen (Mass.) 612; Snow v. Fitchburg, 136 Mass. 183; Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 176. (4) The method of levying and

apportioning the tax and the manner of its collection is a legislative question, and the discretion lodged in the legislative body is not subject to the control of the courts. Egyptian Levee Co. v. Hardin, 27 Mo. 498; Garrett v. St. Louis, 25 Mo. 513; Farrar v. St. Louis, 80 Mo. 395; Kansas City Grading Co. v. Holden, 107 Mo. 305; Moberly v. Hogan, 131 Mo. 23; Keith v. Bingham, 100 Mo. 307; Morrison v. Morey, 146 Mo. 544; Barber Co. v. French, 158 Mo. 534; Prior v. Construction Co., 170 Mo. 439; Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409; Meier v. St. Louis, 180 Mo. 391; Paving Co. v. Munn, 185 Mo. 552; Mattingly v. District of Columbia, 97 U. S. 692; Spencer v. Merchant, 125 U. S. 357; Hagar v. Reclamation District, 111 U. S. 705; Baumann v. Ross, 167 U. S. 589, where various rules are summed up and many citations given; Railroad v. Barber Co., 197 U. S. 430; Heman Const. Co. v. Railroad, 104 S. W. 67; Barber Asphalt Co. v. French, 181 U. S. 324; Webster v. Fargo, 181 U. S. 394; Heman v. Schulte, 189 U. S. 507; English v. Mayor of Wilmington, 37 Atl. 158; Pearson v. Zable, 78 Ky. 170; Dewey v. Des Moines, 101 Ia. 416; Bank v. Spokane, 18 Wash. 456; Adams v. Metropolitan Park Comsrs., 165 Mass. 497; Kingman v. Commissioners, 153 Mass. 566; Springfield v. Gay, 12 Allen (Mass.) 612; Snow v. Fitchburg, 136 Mass. 183; Cleveland v. Tripp, 13 R. I. 50; Raleigh v. Peace, 110 N. C. 38; 25 Am. and Eng. Ency. Law, 516, where about three hundred cases are cited.    (5)    The doctrine of ''reasonableness'' in the exercise of the legislative power and the ''potentiality'' of benefits as justifying the legislative determination in levying assessments for local improvements: Corrigan v. Gage, 68 Mo. 541; Chicago v. Blair, 149 Ill. 310; Hansen v. Omaha, 11 Neb. 37. The doctrine that the judiciary may properly declare an act of the legislature, or of a municipality, void simply, because unreasonable, is not sustained by the decisions. Morse v. Westport, 136 Mo. 276; People v. Brooklyn,

4 N. Y. 420; Heman v. Allen, 156 Mo. 534; Barber Co. v. French, 158 Mo. 535; Paving Co. v. Munn, 185 Mo. 563. That local assessments upon real estate is a legitimate and authorized method of raising money, not only for maintaining but also for purchasing and constructing parks and boulevards, is as well settled in this country to-day as any principle of law can be determined by the courts. Kansas City v. Ward, 134 Mo. 172; Kansas City v. Langston, 147 Mo. 259; Kansas City v. Bacon, 157 Mo. 450; Shoemaker v. United States, 147 U. S. 302; Craighill v. Lambert, 168 U. S. 611; Owners of Ground v. Mayor of Albany, 15 Wend. 376; Holt v. City Council of Somerville, 127 Mass. 413; Kansas City ex rel. v. Scarritt, 127 Mo. 642; Foster v. Park Comsrs., 133 Mass. 338; Matter of Comsrs. Central Park, 63 Barb. 282; State v. District Court of Hennepin Co., 33 Minn. 235; Kedzie v. West Chicago Park Comsrs. 114 Ill. 280; Brooklyn Park Cmsrs. v. Armstrong, 45 N. Y. 234; Briggs v. Whitney, 159 Mass. 97; People v. Brislin, 80 Ill. 423; Dunham v. People, 96 Ill. 331; R. S. Illinois, 1874, chap. 105, p. 733; West Chicago Park Comsrs. v. Sweet, 167 Ill. 326; Adams v. Met. Park Comsrs., 165 Mass. 497; Kingman v. Commissioners, 153 Mass. 566. (6) The language of section 33 of article 10 in question, specifying the object of the assessment to be for "maintaining, adorning, constructing, repairing, and otherwise improving park or parks, parkways," etc., located within the district upon which the assessment is levied, clearly defines the purposes for which special assessments are authorized, to use the language of Judge GANTT, "by the unbroken current of authority in this country." Barber Co. v. Hezel, 155 Mo. 399; charter of Kansas City, art. 9, sec. 7; Kansas City v. Huling, 87 Mo. 203; Gibbons v. Owens, 115 Mo. 259; Moore v. Westport, 110 Mo. 509; Black v. Ross, 37 Mo. App. 250. (7) As to property not assessed within the benefit district: "The illegal exemption by

city ordinance of property of one taxpayer from assessment of a special sewer tax, will not authorize an injunction to restrain the city from collecting the assessment against another taxpayer, not exceeding the amount which the city was authorized to impose, certainly not unless it appears that, upon the payment of the assessment sought to be enjoined, the plaintiff will have paid more than would have been his proportion had it not been for the exemption." Page v. St. Louis, 20 Mo. 136; Paving Co. v. Munn, 185 Mo. 563; Davis v. Newark, 54 N. J. L. 147; Righter v. Newark, 45 N. J. L. 105; Humphreys v. Bayonne, 60 N. J. L. 406. The language of section 33 cannot be construed as counsel seek to construe it. It is permissive and not mandatory as to property which may or may not be assessed. If the section provided that all of the real estate within the park district must be assessed, then the argument of counsel might have some force; but as to property used for churches, school and charitable institutions and for railroad rights of way, the most that any court has decided on this point is that such properties "may be" assessed; that they are not by the Constitution "exempt" from such special taxation. Kansas City v. Baird, 98 Mo. 220; Owners of Ground v. Mayor of Albany, 15 Wend. 374; Cooley on Taxation (2 Ed.), p. 171; Land Co. v. Cook, 3 N. Y. App. Div. 164; Scotland Co. v. Railroad, 65 Mo. 123; College v. Schaefer, 104 Mo. 267; In re Churchill, 82 N. Y. 288; State ex rel. v. Lumber Co., 198 Mo. 430. (8) The contention of the complainants that section 33 and the ordinances thereunder, as to property charged with the assessment, violate that clause of the Fourteenth Amendment of the Constitution of the United States, which provides that "no State shall deny to any person equal protection of the laws," is not tenable. That such clause does not apply to exemption it is not necessary to argue, and if all the property assessed is

assessed at a uniform ratio and by a uniform method, the provision of the Constitution above referred to is not violated.

VALLIANT, J.—This is a suit in equity to enjoin the defendants, the city and the city treasurer, from selling lands of the plaintiffs for delinquent special taxes called by plaintiffs the Park and Boulevard Maintenance Taxes, they having paid all the other taxes assessed against these properties.

A temporary injunction was issued at the institution of the suit, but on final hearing the injunction was dissolved and the plaintiffs' bill dismissed, from which decree the plaintiffs appealed.

The suit is founded on the theory that the special taxes in question were invalid, and that theory involves the question of the validity of the city ordinance under which the assessment was made and of the charter provision under which the Common Council acted in passing the ordinance.

Kansas City is organized under a special charter adopted in 1889, pursuant to sections 16 and 17, article 9, of the Constitution of 1875. By an amendment adopted in 1893, what is now article 10, was added to the charter. That article provides for the establishment of a Board of Park Commissioners "to devise and adopt a system of public parks, park-ways and boulevards," and to have general charge of the same. By its terms all the territory then in the city was divided into three park districts, one of which, designated as "West Park District," embraces the city lots of the plaintiffs in this suit. The area embraced in that district is about three miles in length by one and a fourth to one and a half miles in width, including lots devoted to residences, and lots devoted to all kinds of business and other purposes which are naturally to be expected in a great and growing city like Kansas City;

among which appellants call especial attention to lots owned and occupied for church purposes, lots owned by the city for fire engine houses, waterworks, etc., and also a large number of lots owned and occupied by railroad companies for their rights of way and other railroad purposes. This article 10 provides how land may be selected, the procedure for acquiring the same and the assessment of benefits on the real estate in the district for the purpose of obtaining the money needed to pay for the land taken, the constructing, improving and maintaining the parks, park-ways, boulevards, etc.

The particular part of that article which commands our attention in this case is section 33 which is as follows:

"The real estate, exclusive of improvements thereon, in each park district may, upon recommendation of the board of park commissioners, be assessed annually for maintaining, adorning, constructing, repairing and otherwise improving the park or parks, parkways, road or roads, boulevard or boulevards, avenue or avenues, or portions thereof, located therein, which are under the control and management of the board of park commissioners; and such assessment may be made according to the valuation and assessment of real estate in each park district made for city purposes. Every such assessment shall be made and collected as provided by ordinance of the common council."

Pursuant to that section the Common Council passed ordinance number 9674, the first section of which is as follows:

"That in pursuance of section number thirty-three of article numbered ten of the charter of said city, there is hereby levied for the fiscal year of 1898, upon all real estate, exclusive of all improvements thereon, liable for taxation for State and county purposes, in the West Park District in Kansas City, Mis-

souri, a special assessment of two and one-half mills on each dollar of the assessed value of all said real estate, exclusive of said improvements, as shown by the books of the city assessor for the assessment of real estate in said West Park District made for general city purposes in said year.''

At the same time other ordinances of like import applicable to the other park districts in the city were passed.

Appellants call attention to the fact that by the terms of the ordinance in this case only real estate, exclusive of improvements, is taxed, and, of it, only so much as is shown by the books of the city assessor as the assessment of real estate made for general city purposes, the effect of which is to omit from the special tax assessed all church property and city property, because such do not appear on the books of the city assessor, the church and city property being exempt from general city taxes, and the railroad property being assessed by the State Board of Equalization.

At the date of the enactment of this ordinance the only land owned by the city for park purposes in the West Park District was a small lot about sixty-five feet square and a tract about four acres in area which the city owned and had by ordinance appropriated to that purpose, but the ordinance reserved the right to the city to appropriate the land to other purposes or sell it if it should thereafter see fit to do so. And there was no boulevard or street or avenue at that date in that district under the control of the Park Commissioners. But there had been selected and designated by the Park Commissioners in that district 134 acres of land for a park to be known as Penn Valley Park and a tract of 26 acres for a park to be known as West Terrace Park, and proceedings were then pending for the condemnation of those lands, which proceedings were then far advanced, and have since

the trial of this cause been concluded, and those two parks are now accomplished facts.

The assessed value of the lands in this district on the city tax books for 1898, exclusive of improvements, was $10,469,565; the assessed value of the buildings and improvements on the lands was $5,659,970.

Before enacting the ordinance in question making this special tax assessment, the city had already assessed taxes for general city purposes on all the property subject to taxation up to the limit allowed by the Constitution and these plaintiffs paid that assessment.

This appeal has been pending for several years in this court, having been continued from time to time by stipulation of counsel, and in the meantime other cases involving nearly the same points have come on for hearing and in those cases almost all the questions raised in this appeal have been decided adversely to appellants' present contentions.

I.  Appellants' first point is that if this Park Maintenance tax is to be understood as a tax for general purposes it is void for several reasons assigned. That point may be passed over with saying that this is in no sense a general tax; it must be maintained on the theory that it is a special tax for local improvements or not at all.

II.  The next point presented is that the ordinance assessing the special tax is unlawful because it does not conform to the requirements of section 33 of article 10 of the charter under which it was enacted. The alleged difference between the charter provision and the ordinance is that the charter authorizes the imposing of the tax on all the real estate, exclusive of improvements, in the district, whereas the ordinance imposes the tax only on so much of the real estate as is shown on the books of the city assessor for general

city purposes, the result being the omission of the church, city and railroad properties already mentioned.

Whilst this question was not presented in the case of Kansas City v. Bacon, 147 Mo. 259, in exactly the same form in which it is now presented, yet one of the grounds on which the validity of the benefit assessment in question in that case was challenged was that it omitted from the burden of the tax assessed the same property that is now referred to and this court held that the assessment was not, for that reason, invalid.

In that case there was a condemnation of land for the park, and a benefit district marked out to be assessed to raise money to pay for the land taken; the freeholders' jury omitted church and railroad properties from the assessment, and the court held that it was lawful to do so. In the case at bar we have no benefit assessment by a jury, but we have an ordinance imposing a uniform *ad valorem* tax of 2½ mills on the dollar of all real estate in the district exclusive of improvements except the city, church and railroad property. Whilst the charter in terms authorizes the Common Council to levy a special tax in that way on all the real estate, exclusive of improvements, in the district, yet if the council, exercising the same reason that the jury exercised in the case of Kansas City v. Bacon, concluded that such property was not benefited, they were not compelled to include it in the assessment. Whether or not property possessing a distinct peculiar character is in fact benefited by a particular kind of improvement is a question to which different answers might be given. For a while it was doubted if railroad rights of way could be taxed for street improvements, but this court has recently settled that question in Heman Const. Co. v. Railroad, 206 Mo. 172, holding that the railroad right of way was liable.

Section 33 is the authority for this ordinance and

if the ordinance violates that section it is invalid. That section of the charter does not require all of the real estate in the district to be assessed for this tax; it is permissive in its form, it is a grant of power with a limit within which the Common Council may act. Article 10 of the city charter, adopted as it was in conformity with the provisions of the Constitution, is of at least as much force and effect as an act of the General Assembly enacting a similar charter; it confers on the city the power to levy such a tax, but the city is not compelled to go to the limit of the power in order to avail itself of its authority; it is sufficient if it acts within the limit.

Section 3, article 10, of the State Constitution requiring taxes to be uniform, and sections 6 and 7 of the same article, the one exempting properties of certain kinds and the other forbidding any other exemptions, refer only to general taxes; those sections neither exempt nor forbid the exemption of properties from special assessments for local improvement. If the legislative department of the State government or that of the city government should make an arbitrary selection of property to be taxed for the benefit of the whole district, omitting other property of like kind and used for like purposes, there are other clauses of both State and Federal constitutions that could be applied to prevent such inequality, but this is not such a case; here all properties of the same class are taxed and all properties of other classes are omitted from the assessment. The classification here shown is not beyond the legislative discretion of the Common Council.

If Kansas City had not availed itself of the provisions contained in sections 16 and 17 of article 9 of the Constitution, and if it was existing under a charter granted by the General Assembly, and if in such case the General Assembly had written into the charter the very same municipal powers that are contained in

article 10 of the charter we are now construing, would any one doubt that the city had authority to establish these parks and maintain them by special assessments on private property in a benefit district established in conformity with such charter grants? If such doubts should arise they would rest alone on the idea that parks, and the boulevards appurtenant to the parks, were public improvements only, not local in their character, therefore to be obtained and maintained only at the expense of the city. But whatever doubts there may have been at one time on that point have been dispelled by the decisions of this court construing this very article 10 of the charter of Kansas City. [Kansas City v. Ward, 134 Mo. 172; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Bacon, 157 Mo. 450; Barber Asphalt Pav. Co. v. French, 158 Mo. 534, and other cases on this point cited in the brief for respondents.]

III. It is contended that the assessment is void because when made there was no park in the district. That contention is hardly supported by the facts in the case. It is true there was no finished park in the district, and there was no very considerable quantity of land acquired for park purposes, but there was a small piece of land unequivocally dedicated, and a tract of three or four acres donated by the city with the right to reclaim reserved. But if that was all that in fairness could be claimed by the city as ground for the ordinance imposing this tax, it would be liable to a graver charge affecting its good faith and validity than the strict technical grounds that are now brought against it. But that was not all that the city was providing for. Section 8 of article 10 requires that at least one park shall be provided in each district, and the whole article contemplates a system of parks and park boulevards. The Park Commissioners had laid out and the city had adopted, as far as it was able,

two large parks in this district, and was pressing the litigation that was required for the accomplishment of the design with all its might, and we are told in the brief for respondents that one of these, at least, the Penn Valley Park, has been completed while this suit has been pending.

This is a suit in equity and we must bear in mind that a court of equity does not very readily lend its aid to advance a mere technical legal right, when there is no principle of natural justice involved; it prefers in such case generally to leave the parties to the more technical courts of law. Whilst the petition frankly states that litigation on the part of the city was pending to acquire land and construct parks, yet there was no showing made either in the petition or at the trial that the work undertaken by the city was not being pressed with energy or that there was ground for any reasonable doubt that in the due course of the law there would be parks in the district for which the money that this assessment would raise would be required. Under those conditions there was no occasion for the interposition of the extraordinary remedy of injunction.

IV. Appellants' fourth point relates to the omission of the church, city and railroad property from the assessment. We have already considered that subject in discussing appellants' second point.

V. Section 2 of the ordinance provides that "the special assessment hereby levied shall be used for the purposes of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, roads, boulevards or avenues, or portions thereof, located in West Park District."

Appellants complain of that that it is "too general, indefinite and uncertain," and they make a very pleasing argument to show that under the terms there

used the money raised by the tax might be frittered away in frivolous and evanescent things in the neglect of more important and lasting works.

It is easier to point out defects in an instrument of this kind than it is to show how the evils suggested could be avoided. The learned counsel have not shown how this ordinance could be made more definite and certain without impairing the necessary powers of the Park Commissioners or without involving it in a wilderness of detail. In the administration of laws it is often necessary, and it is not unusual, to trust something to the good faith and good judgment of the administrative officers. The security of the law depends to a great extent on the efficiency and honesty of the officers. The charter of Kansas City, in providing for the establishment of a system of parks, created a Board of Park Commissioners and prescribed a high grade of character for the persons who were to compose that board; they were to be five in number, ''freeholders and electors of the city, well known for their intelligence and integrity, who shall have resided in the territory embraced within the city limits at the time of their appointment for a period of five years.'' The only compensation they were to receive was the honor and distinction the office conferred. If they showed cause for removal the law provided for their removal.

In the matter of park adornment there is room for wide differences of opinion, the opinions resulting in a great measure from individual taste and education; therefore it is next to impossible to be altogether specific in prescribing in an ordinance of what the adornment in a park shall consist. The framers of the city charter made the best provision for this uncertainty that they could, that is, by prescribing the qualifications of the members of the Board of Park Commissioners and trusting greatly to their integrity

and good judgment. If the misfortune should occur that the men in that position fail to measure up to the high standard prescribed, or when their conduct is such as to show incompetency or worse, or when money is appropriated to a purpose that cannot fairly be said to be within the range of their legitimate discretion, there will be found law enough in the land and strength enough in the courts to right any such flagrant wrong they may commit.

VI. Appellants' sixth point is that the uniform tax of two and one-half mills on the dollar, as shown by the city assessment rolls, ignores the question of benefits, and assesses all the property alike in the face of the obvious fact that all is not to the same degree benefited. That is the same argument that has been in the past urged with so much force to show that the front-foot rule of assessment for street improvement was invalid. This court has expressed its opinion too often on that subject to render further discussion of it necessary.

VII. No notice was given the property-owners of the purpose to levy such a tax, and for that reason appellants contend that the assessment was void. The proposition involves also appellants' tenth assignment, that is, that it deprives them of their property without due process of law.

Those points have been repeatedly decided by this court contrary to appellants' present contention in cases growing out of this article 10 of the charter of Kansas City; in the last of which decisions the whole subject and the former decisions were reviewed in an elaborate and exhaustive opinion by Chief Justice GANTT. [Barber Asphalt Pav. Co. v. French, 158 Mo. 534.] The occasion for the review of the subject in that case was a then recent decision of the Supreme Court of the United States, Norwood v. Baker, 172

U. S. 269, which was thought by some to lay down a different rule from that which this court had before declared, but which when we came to consider it we thought was not so. In the case at bar the uniform *ad valorem* tax was imposed by a direct exercise of the legislative power of the city government and it was held in the case last above referred to that in such case no notice to the property-owner was necessary and that the proceeding did not deprive him of his property without due process of law. We can say nothing more on the subject than was said in that case.

VIII. Appellants' eighth assignment is that since this ordinance was passed at the same time when other ordinances of like character were passed covering in their aggregate all the territory in the city, the tax was a general one as distinguished from a special tax for local improvement, and since the taxing power for general city purposes had already been exercised to the full constitutional limit, the tax now in question was void.

True there were five ordinances passed at or about the same time, but each one of them covered only one district and its operation was entirely distinct from that of the others. This is a special, not a general tax.

IX. Lastly, the appellants think that by this tax they are denied that "equal protection of the law" that the Fourteenth Amendment guarantees them. This assignment rests chiefly on a fact we have already above discussed, that is, that church and railroad property within the district was omitted from the assessment. From what we above said on that subject we must rule this point against appellants.

The judgment is affirmed. *Gantt, C. J., Lamm* and *Fox, JJ.,* concur; *Burgess, Graves* and *Woodson, JJ.,* dissent.

DISSENTING OPINION.

WOODSON, J.—This is a proceeding in equity, which was filed in the circuit court of Jackson county, to enjoin the defendants from selling certain real estate, described in the petition and located in Kansas City, belonging to the plaintiffs, for special taxes, designated in the proceeding as "Park and Boulevard Maintenance Tax;" and asking that the special tax-bills be declared null and void, for the reason that they were issued in violation of the Constitution of the United States and the State of Missouri, and contrary to the statutes of this State and the charter of Kansas City, and that they constituted clouds upon the titles of plaintiffs to said real estate.

As no point is made as to the sufficiency of the pleadings, they will be omitted from this statement.

The cause was submitted to the court upon the following agreed statement of facts:

"1. Plaintiffs are, and were at the commencement of this suit, the owners of the property mentioned and described in the amended petition and in 'Schedule A' made a part thereof.

"2. Said 'Schedule A' is a copy of the land tax book for the year 1898, so far as that book relates to the property of these plaintiffs in the West Park District, the said land tax book being the assessment roll with the taxes extended thereon for that year, with the collector's notes entered thereon.

"3. The following is a list of real estate property in said West Park District not charged with any State, county or general city tax for said year, because exempt from the payment of such taxes, and on all of which no park maintenance tax was levied. The numbers on the left-hand side running from 1 to 55 are the numbers designated on the plat herewith filed, marked 'Exhibit A' and made a part thereof. Said

parcels 1 to 55 contain in the aggregate 37 acres of land. [Here follows the said list. It gives a description of the said 55 parcels of land, most of which are described as belonging to various churches, charitable institutions, school district of Kansas City, etc. Parcel 41 is described as being Kansas City engine house. Two or three parcels are described as belonging to Kansas City.]

"4. The various parcels of land designated on said plat by the letters 'R. R. L.' placed thereon, are owned by various railroad companies, the most of them being used for track and depot purposes, and some of them for shop and roundhouse purposes. The said lands marked 'R. R. L.' amount in the aggregate to 200 acres. The said lands do not appear on the assessment roll, because assessed by the State Board of Equalization. Said 'R. R. L.' lots and lands are not charged with any local park maintenance tax.

"5. The assessed value of lands for said years, buildings and improvements thereon excluded, appearing upon said land tax-book, located in said West Park District, is $10,469,565; the assessed value of buildings and improvements on lands in said West Park District, as the same appears upon said land tax-book, is $5,659,970.

"6. The following is a true copy of the ordinance of said city levying general taxes for the year 1898. [This ordinance was approved April 21, 1898, the first and second sections being as follows]:

" 'Section I. Taxes for the fiscal year 1898, commencing on the 18th day of April, 1898, are hereby levied on all property in Kansas City liable to taxation for State and county purposes, and not by general law exempt from municipal taxation, as follows, to-wit:

" '1st. A general tax of ten mills on each dollar of assessed value for general purposes.

" '2d. A tax of one mill on each dollar of such assessed value, which tax is necessary and will be sufficient to pay the amount certified to the Common Council by the Comptroller, to be raised by taxation during the fiscal year 1898, and for maintaining the sinking fund for the redemption of the bonds of the city. Of this one mill, the one-half mill is for the sinking fund, the other one-half mill is for bond and interest fund.

" '3d. A tax of one mill on each dollar for such assessed value, which tax is necessary and will be sufficient for the maintenance of the water sinking fund created for the redemption of the city's outstanding waterworks judgment bonds at the time of their maturity.

" 'Section II. The taxes hereby levied shall be entered and extended in the land and personal tax-book for 1898, as follows, to-wit:

" '1st. The general tax against each tract or parcel of land or person or corporation in the first left-hand column, headed "General Tax Per Centum."

" '2d. The aggregate amount of all other taxes against each tract or parcel of land or person or corporation, as one tax, in the second left-hand column, headed "Per Cent Tax for payment of Bonds."

"The following is a true copy of the ordinance mentioned in the amended petition as levying the special park maintenance tax in said district for the year 1898, with a true copy of the resolution of the Board of Park Commissioners thereto attached. [The resolution is numbered 978; the title and certificate omitted]:

" 'Whereas, funds will be needed during the year 1898 for maintaining, constructing, repairing and otherwise improving parks, parkways, boulevards and other public grounds located in the West Park District and

under the control and management of the Board of Park Commissioners.

" 'Therefore, be it provided by the Board of Park Commissioners of Kansas City, Missouri:

" 'Section 1. That for the purpose of maintaining, adorning, constructing and otherwise improving the parks, parkways, roads, boulevards or avenues located in the West Park District in Kansas City, Missouri, said board does hereby recommend to the Common Council of said city that there be levied for the year 1898 a special assessment of two and one-half mills on each dollar of the assessed value upon all real estate liable for taxation for State and county purposes, exclusive of buildings and improvements thereon, in the West Park District in Kansas City, Missouri, according to the valuation and assessment of real estate in said West Park District made for city purposes for said year; said assessment to be made and collected as said Common Council may provide by ordinance in pursuance of section number thirty-three of article number ten of the charter of Kansas City, aforesaid.

" 'Section 2. That a certified copy of this resolution be delivered to each house of the Common Council aforesaid as notice of the action and recommendation of this board.'

" 'An ordinance levying a special assessment for the year 1898 upon all real estate, exclusive of the improvements thereon, in the West Park District in Kansas City, Missouri, for the purpose of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, boulevards and avenues located in said West Park District, and providing for the manner of payment and collection of said special assessments in pursuance of section number thirty-three of article number ten of the charter of said city.

" 'Whereas, the Board of Park Commissioners of

Kansas City, Missouri, . . . has recommended to the Common Council of said city that a special assessment be made upon all real estate, exclusive of the improvements thereon, in the West Park District for the year 1898 for the purpose of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, roads, boulevards or avenues located in said West Park District which are under the control and management of the Board of Park Commissioners of said city.

"'Therefore be it ordained by the Common Council of Kansas City:

"'Section 1. That in pursuance of section number thirty-three of article number ten of the charter of said city, there is hereby levied for the fiscal year of 1898 upon all real estate, exclusive of all improvements thereon, liable for taxation for State and county purposes in the West Park District in Kansas City, Missouri, a special assessment of two and one-half mills on each dollar of the assessed value of all said real estate, exclusive of said improvements, as shown by the books of the city assessor for the assessment of real estate in said West Park District made for general city purposes in said year.

"'Section 2. The special assessment hereby levied and made shall be used for the purposes of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, roads, boulevards or avenues, or portions thereof, located in said West Park District, which are under the control and management of the Board of Park Commissioners as provided in section number thirty-three of article number ten of the charter of said city.

"'Section 3. The special assessment hereby levied shall be entered and extended against each tract or parcel of land in said West Park District liable to such assessment and be collectible in the same manner and

at the same time, as far as practicable, as is provided by the city charter for entering, extending and collecting of general city taxes on said real property. Said special assessment shall be subject to the same rebates and when delinquent shall bear the same rates of interest and be subject to the same penalties as provided by the charter in the case of delinquent general city taxes.

" 'The laws and ordinances governing the entering, extending, payment and collection, and the sale for non-payment of general taxes of the city, shall, as far as practicable, govern the entering, extending and collection and the sale for non-payment of the special assessment hereby levied, provided the assessment herein made shall in no way be affected or invalidated by reason of said special assessment not being extended by the city auditor or delivered to the city treasurer within the time mentioned in section twenty of article five of said city charter relating to general city taxes.

" 'Section 4. It shall be the duty of the city treasurer to keep a separate account of all assessments levied and collected in pursuance of this ordinance, and said money when collected shall be deposited in the bank or banking institutions of said city having a contract with the city for deposits and safe keeping of the funds of said city in pursuance of section number twenty-two of article number four of the city charter, and all interest received from such depository or depositories on account of the depositing of any fund therein arising from this assessment shall be credited to and become a part of the fund received from this assessment and shall be used for the same purposes for which this assessment is made.

" 'Section 5. All ordinances or parts of ordinances in conflict with this ordinance, in so far as they conflict with this ordinance, are hereby repealed.

" 'Approved April 21, 1898.'

"8.  At the same time the Common Council passed and the Mayor approved four other ordinances levying park maintenance taxes in the other park districts, as stated in the amended petition.  These five ordinances cover all the territory within the corporate limits of Kansas City.  In each of the said last-named districts there are, and were at the passage of said ordinances, parks and boulevards to be maintained, which parks and boulevards are owned by the city and are under the control and management of the Board of Park Commissioners.

"9.  The following is a copy of an ordinance of said city devoting property to park purposes, the city being the owner of the property at the date thereof. This parcel devoted to park purposes contains four acres.  It is a part of the land designated on the plat called 'Exhibit A' as No. 19:

" 'An ordinance appropriating certain land in the West Park District, now owned by Kansas City, Missouri, to park purposes and to place the same under the control and management of the Board of Park Commissioners.

" 'Be it ordained by the Common Council of Kansas City:

" 'Section 1.  That the following described land situated in the West Park District, and now owned by Kansas City, Missouri, be and the same is hereby appropriated to park purposes to the end that the same may be improved, adorned and maintained as and for a public park, to-wit:

" 'A tract of land bounded on the west by the east line of Holly street in said Kansas City, Missouri, on the north by the south line of Twentieth street, on the east by the west line of West Prospect Place, and on the south by the north line produced from the west line of Reservoir avenue.

" 'Section 2. The land above described in section one shall be and the same is hereby placed under the control and management of the Board of Park Commissioners of Kansas City, Missouri, to be improved, adorned and regulated in such manner as said Board of Park Commissioners may deem best; provided, however, that said city reserves the right at any time by ordinance to use said ground for other purposes or to sell or dispose of said ground.

" 'Section 3. All ordinances or parts of ordinances in conflict with this ordinance, in so far as they conflict herewith, are hereby repealed.

" 'Approved September 11, 1897.'

"10. The parcel designated No. 32, containing one-tenth of an acre, was conveyed to Kansas City for a park by a deed dated the 5th day of May, 1882. Said deed was accepted by the city and the parcel of land so conveyed was named Prospect Park. The following is a true copy of said deed with the endorsements thereon:

" 'Know all men by these presents that we; William Mulkey and Catherine Mulkey, the wife of said William Mulkey, of the City of Kansas, county of Jackson and State of Missouri, for and in consideration of one dollar to them in hand paid by the City of Kansas, in the county of Jackson and State of Missouri, the receipt whereof is hereby acknowledged, do by these presents remise, release and forever quitclaim unto the said City of Kansas the following described place or parcel of land situate in said City of Kansas aforesaid, to-wit: Lot one, block seven, as shown by the recorded plat of the resurvey of Payne's Addition to the said City of Kansas. To have and to hold the same for the purpose of a public park forever and for no other purpose. In witness whereof we have here-

unto subscribed our names and affixed our seals the
fifth day of May, A. D. 1882.

" 'WILLIAM MULKEY,
CATHERINE MULKEY.'

"This deed was duly acknowledged on the 5th of
May, 1882, and was duly recorded on the 31st of May,
1882.

"11. The above two pieces of land were the only
parks in said West Park District at the date of said
ordinance levying special park maintenance assess-
ment. No boulevard, street, avenue or road in said
district had at that time been placed under the control
of the Board of Park Commissioners; but the follow-
ing proceedings had been taken by Kansas City for the
purposes of establishing and acquiring parks in the
West Park District under the provisions of the charter:

"The Board of Park Commissioners had selected
and designated land in the West Park District for two
parks to be established therein and known respectively
as Penn Valley and West Terrace Park; said selection
and designation had been by resolutions by the Board
of Park Commissioners defined and described, and on
the 6th day of June, 1886, upon recommendation of the
Board of Park Commissioners, aforesaid, an ordinance
was passed in the Common Council and approved by the
mayor of Kansas City, entitled, 'An ordinance to open
and establish a public park in the West Park District
in Kansas City, Missouri, to be known as Penn Valley;'
the area of the land described in said ordinance to be
condemned and taken for said park was 134 acres.
By authority and provision of said ordinance, proceed-
ings for the condemnation of the land described there-
in to be taken for said Penn Valley Park were begun
in the circuit court of Kansas City, Missouri, on the
16th day of December, 1896, by cause numbered 28709
in division No. 3 of said court, entitled, 'In the matter

of the condemnation of land for opening and establish-
ing a public park in the West Park District of Kansas
City, Missouri, to be known as Penn Valley, under
Ordinance No. 7353, approved June 6, 1896.' Said con-
demnation proceedings were concluded in the circuit
court by the rendition of a verdict by the jury of free-
holders empaneled in said cause, to ascertain the value
of the land taken and assess benefits arising therefrom,
which said verdict was filed in the circuit court in said
cause on the 24th day of April, 1897.

"Motions for a new trial were duly filed therein,
argued and considered by the court and overruled, and
judgment was rendered by the said circuit court on
the 5th day of November, 1898, in said cause, confirm-
ing the verdict of the jury, and providing that said
Kansas City have and hold the property sought to be
taken aforesaid for park purposes upon payment there-
for of the compensation fixed by the jury. An appeal
was taken from said judgment of the court by Martha
E. Bacon, James Munroe and W. N. Munroe, owners
of certain property which had been assessed with ben-
efits for said park in said proceedings. Said appel-
lants gave a supersedeas bond and filed their bill of
exceptions in said cause, which was allowed by the
court on the 31st day of October, 1899, and said cause
is now, the 4th day of January, 1900, pending in the
Supreme Court of the State of Missouri, but has not
yet been argued and submitted.

"On the 11th day of September, 1895, ordinance
was passed on recommendation of the Board of Park
Commissioners, locating a park in West Park District,
to be known as West Terrace, and on the 5th day of
October, 1896, proceedings were concluded for the con-
demnation of land for said park by the rendition of
a verdict by a jury in said cause, fixing the compensa-
tion to be paid for said property and assessments of
benefits to be received in payment of the same; and,

afterwards, to-wit, on the 20th day of November, 1897, the verdict of said jury was confirmed by the court by decree which declared that the city should have and hold the property sought to be taken for the purposes specified in the ordinance, providing for such improvement, upon payment of the compensation assessed by the jury for the property to be taken. Said cause was also appealed to the Supreme Court, and on the 18th day of April, 1899, the Common Council of Kansas City, on recommendation of the Board of Park Commissioners, repealed said ordinance and dismissed the proceedings thereunder, and enacted a new ordinance in lieu thereof, reducing the area to be taken for said West Terrace Park.

"Under this new ordinance, proceedings were at once begun and are now pending in the circuit court of Jackson county, Missouri, for the establishment of the West Terrace Park to contain an area of 26 acres. This cause has been tried and submitted to the jury, which is now assessing the value of lands and benefits to arise from the improvement. Said two parks are designated on the map 'Exhibit A' herewith filed in red and are marked respectively 'Penn Valley' and 'West Terrace.'

"12. All parties reserve the right to object to any of the facts before stated on the ground that they are immaterial or irrelevant. All parties reserve the right to offer other evidence as to them shall seem best. Counsel on both sides of this case understand that the charter of Kansas City and amendments thereto, mentioned in the pleadings, are public laws of which all courts are required to take judicial notice, but to obviate any trouble that may arise it is agreed that the charter and amendments as set forth in a printed book entitled 'Charter and Revised Ordinances Annotated, Kansas City, Missouri, 1898,' shall be considered a part of the record in this case the same as if copied

herein in all courts in which this case may be tried and in all courts to which this case may go on review."

"The said 'Schedule A,' filed with the amended petition and made a part thereof, being the schedule mentioned in the first paragraph of said agreed statement of facts, was also read in evidence by the plaintiffs, and which said schedule is in words and figures as follows:

"[Here follows said 'Schedule A.' It is headed 'Land Tax Book for 1898 of Kansas City, Jackson County, Missouri.' In one column it gives the tract numbers corresponding to the numbers stated in the petition; in another a description of each parcel or lot; in another the names of the owners. Then follows columns headed as follows: 'Value Per Parcel Returned by Assessor,' 'Value of Improvements Returned by Assessor,' 'Total Value Returned by Assessor,' 'Value Per Parcel as Corrected by Board of Appeals,' 'General Tax Per Centum,' 'Per Cent Tax for Payment of Bonds and Coupons,' 'Total Tax for 1898,' 'Taxes Paid and Date of Payment for 1898,' and 'Assessment for Maintaining Parks and Boulevards in West Park District.' This schedule shows all taxes paid save the last-named tax.

"The plaintiffs also put in evidence the plat mentioned in said agreed statement of facts as 'Exhibit A.' It is agreed that the original of said plat may be sent up to the Supreme Court or to any other appellate court to which this case may go, and that it shall be taken and considered the same as if it were a certified copy."

The plaintiffs, to further maintain the issues on their part, introduced parol evidence tending to show how the assessment of the taxes was made, and the character and amount of land owned by the city for

park purposes situate in West Park District; none of which, as I view the case, need be here stated.

The court found for the defendants, dissolved the temporary injunction, and dismissed plaintiffs' bill.

In due time plaintiffs filed their motion for a new trial, and in arrest of judgment, which were, by the court, overruled—to which action of the court in overruling said motions, the plaintiffs duly excepted and have appealed the cause to this court.

I. In my judgment the taxes in controversy are void for two reasons; and that for either of which the judgment of the circuit court should be reversed, and a decree entered here in conformity to the prayer of the bill. Those reasons are as follows: First, because they were in violation of the express terms of section 33 of article 10 of the charter of Kansas City. Second, because the ordinance making the levy is unconstitutional and void, for the reason that it is in conflict with that portion of section 1 of the 14th Amendment of the Constitution of the United States, which is in the following words: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

I will consider these two propositions in the order stated.

Section 33 of article 10 of the charter of Kansas City reads as follows: "The real estate, exclusive of improvements thereon, in each park district may, upon recommendation of the Board of Park Commissioners, be assessed annually for maintaining, adorning, constructing, repairing and otherwise improving the park or parks, parkways, road or roads, boulevard or boulevards, avenue or avenues, or portions thereof, located

therein, which are under the control and management of the Board of Park Commissioners, and such assessment may be made according to the valuation and assessment of real estate in each park district made for city purposes. Every such assessment shall be made and collected as provided by ordinance of the Common Council."

The ordinance making the levy complained of provides in part as follows:

"Section 1. That in pursuance of section number thirty-three of article number ten of the charter of said city there is hereby levied for the fiscal year of 1898 upon all real estate, exclusive of all improvements thereon, liable for taxation for State and county purposes in the West Park District in Kansas City, Missouri, a special assessment of two and one-half mills on each dollar of the assessed value of all said real estate, exclusive of said improvements, as shown by the books of the city assessor for the assessment of real estate in said West Park District made for general city purposes in said year.

"Section 2. The special assessment hereby levied and made shall be used for the purpose of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, roads, boulevards or avenues, or portions thereof, located in said West Park District," etc.

There were fifty-five tracts of real estate lying within the bounds of said park district which did not appear upon the books of the city assessor showing the real estate of said district which was assessed for general city purposes for the year 1898, and were, therefore, under the terms of section 1 of said ordinance, excluded from the special assessment for park and boulevard purposes. Said parcels of land in the aggregate exceeded in area more than two hundred and forty acres, and belonged to various railroad com-

panies, churches, charitable institutions, and school districts of said city. Two or three pieces of it belonged to Kansas City. The value of this property so excluded from that assessment, exclusive of the improvements thereon, at the time the levy was made, was about $3,500,000. Said section 1 of the ordinance making the levy for park and boulevard purposes is clearly in direct conflict with and repugnant to section 33 of article ten of the charter of said city. The language of that charter provision is that *"the real estate,* exclusive of improvements thereon, in each park district may . . . be assessed annually,*"* etc. The words "the real estate" there used mean all of the real estate of the district may be assessed, annually, and not *all or any part of the real estate* thereof, which the majority opinion holds them to mean, and which it must necessarily so hold in order to arrive at the conclusions stated in the opinion.

The words "the real estate" of the district are so plain and unambiguous in their meaning that they need no interpretation, and, if undertaken, it would on that account be difficult to find language to do so. In fact, if I correctly understand the majority opinion, it does not hold that those words if considered alone and independent of the words, "May, upon recommendation of the Board of Park Commissioners, be assessed annually for maintaining, adorning," etc., found in the next clause of the section, would mean anything less than the entire real estate lying within the park district, but holds that the words last quoted modify the meaning of the words "the real estate" of the district so as to authorize the park board to assess any or all of said real estate for those purposes. In other words, that when the two clauses are read and construed together they mean the same as if the section read as follows: "Upon the recommendation of the Board of Park Commissioners the city council may

annually assess any or all of the real estate lying within the limits of the park district, provided the parcels selected for those purposes are not arbitrarily made.'' In my judgment that is not the meaning of either of said clauses when considered separately, nor the meaning of the two when read and construed together, as the majority opinion holds. The word "may," as used in the latter quotation from said charter provision, clearly refers to the annual assessment of taxes made for maintaining, adorning, constructing, repairing and otherwise improving the parks and boulevards. Under the conditions the parks and boulevards were in at the time the charter was adopted, no one could tell what amount of revenue would be required to be expended for the purposes mentioned. The framers thereof intended to leave it to the park board to determine whether the assessment should be made annually or not. If one assessment would produce sufficient revenue to support the parks and boulevards for two years, then there would be no necessity for making an annual levy, and for that reason it was left to the park board to recommend how often the levy should be made. This view is strengthened by the fact that under the charter the council cannot make the levy except upon the recommendation of the park board. This construction also metes out exact justice and does equity to all by distributing the burden of taxation equally upon all; while by the construction placed upon it by the majority opinion injustice and oppression are heaped upon the few. By that opinion about $3,500,000 worth of property of the district has escaped taxation, which is about one-third of its assessed value. By that exemption the taxes upon the other property of the district are increased thirty-three and a third per cent — a most unrighteous discrimination and a species of high-handed oppression, which should not be tolerated. If the council, under the guise of exercising a sound

discretion in taxing and exempting property from taxation, can exempt one-third of the property of the district from taxation, and impose its just proportion upon the other two-thirds, why can it not exempt one-half or two-thirds, or a large proportion of it under the same cloak, and justify its conduct for the same reasons advanced here? The council could have with the same degree of reason and justice reversed the matter and have assessed the property which it exempted and exempted that which it assessed.

Clearly the council have no such power.

This question was not involved in the case of Kansas City v. Bacon, 147 Mo. 259, nor in any other case in this court to which my attention has been called. There is nothing in that case that militates against the foregoing observations. That was a proceeding under the Constitution to condemn land for park purposes, and, under the law, before real estate could be assessed for benefits received from establishing the park, a freeholders' jury was required to find, as a matter of fact, that the land was actually benefited by the establishment of the park before the assessment could be made. In that case the jury found that the land was not benefited, and for that reason refused to assess benefits, and this court correctly sustained that finding of the jury; but that is not this case. Here all of the property in the district is conclusively presumed to be benefited, and no owner of any tract of land lying within the boundaries of the district is even entitled to a hearing upon the question of benefits or no benefits. This is a legislative assessment, and the mere fact that the property is located within the benefit district is conclusive of the fact that it is benefited by the improvements. It is thus seen that the question there involved was one of benefits, while the one here is discrimination. This is the very foundation of the scheme of taxation,

and if it is removed the whole park and boulevard system would fall with it. The validity of that scheme of taxation constituted the basis of the principal argument made by counsel on behalf of respondent in his oral presentation of the case to this court, and is most earnestly insisted upon in his able brief filed herein, as is shown by the following authorities: Egyptian Levee Co. v. Hardin, 27 Mo. 498; Garrett v. St. Louis, 25 Mo. 505, 513; Farrar v. St. Louis, 80 Mo. 379, 394, 395; Kansas City Grading Co. v. Holden, 107 Mo. 305; Moberly v. Hogan, 131 Mo. 19, 23; Keith v. Bingham, 100 Mo. 300, 307; Morrison v. Morey, 146 Mo. 543; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; Prior v. Construction Co., 170 Mo. 439; Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409; Meier v. St. Louis, 180 Mo. 391; Paving Co. v. Munn, 185 Mo. 552; Mattingly v. District of Columbia, 97 U. S. 687, 692; Spencer v. Merchant, 125 U. S. 345, 356, 357; Hagar v. Reclamation District, 111 U. S. 701, 705; Bauman v. Ross, 167 U. S. 548, at pages 589, 590, where various rules are summed up and many citations given; Railroad v. Barber Asphalt Co., 197 U. S. 430; Heman Const. Co. v. Railroad, 206 Mo. 172.

Admitting for the argument's sake, and that is the best any one can claim for said charter provision, that the two clauses thereof before quoted when read together render the meaning thereof ambiguous and susceptible of either of the two constructions before suggested, then that construction should be placed upon it which will result in just and reasonable results. In ascertaining the meaning of a law, whether organic or statutory, it is always permissible to consider the consequences of any construction proposed. In obedience to this wise and just cause of construction, this court has many times held that it is not to be presumed that unjust or unreasonable results are to flow from the law; and it should not be construed so as to accomplish such

results if its terms will permit of an interpretation that is just and reasonable. [Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 188.] And, as was said in the case of Plum v. City of Kansas, 101 Mo. l. c. 533, "It is a useful and safe rule of construction to resolve any ambiguity or obscurity in a statute in favor of such reading of it as will best meet the demands of natural justice so far as that can be done without violence to the settled legal principles."

It will not do to say that the able and distinguished gentleman who drafted this charter ever intended to confer upon the city council the power to exempt from taxation property in the district which was taxable under the law, and thereby unjustly increase the burden of taxation upon the remaining property of the district.

Ever since the case of Sheehan v. Good Samaritan Hospital, 50 Mo. 155, this court in an unbroken line of cases, down to date, has uniformly held that all such property as that exempted in the case at bar is not exempt from taxation for benefits received by local improvements. All of these cases are predicated upon the theory that each piece of real estate is specially benefited by the improvement and that it must be taxed with its proportional part of the total cost of the improvement. [Heman Construction Co. v. Railroad, 206 Mo. 172.]

II. The second reason I have for believing the judgment should be reversed is, that the ordinance making the levy of the special taxes involved in this controversy is unconstitutional and void, because it violates section 1 of the XIV. Amendment of the Constitution of the United States, which provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

In the consideration of this question it must be borne in mind that, under the charter provision before

mentioned, the real estate only, exclusive of the improvements thereon, is taxable for park and boulevard purposes.    Thus stripped of all improvements there remains nothing for assessment but the naked land of the district. That land belonged to divers persons and corporations.    The city council by said ordinance assessed certain parcels of that land, and omitted to assess other portions of it.    That assessed was worth about $6,500,000, and that omitted was worth $3,500,-000.

The owners of the lands assessed claim that the ordinance in question denies to them the equal protection of the laws; that it is an unjust discrimination against them and in favor of those whose lands are not assessed, and thereby casts the entire burden of the taxation upon their property, in violation of said amendment.    The intention of that amendment was to prevent legislation which embraces within its provisions only a portion of the persons or things which naturally belong to the same class and who are similary situated.    [Railroad v. Ellis, 165 U. S. 150.]

Upon the other hand, counsel for respondents contends that the record shows that the ordinance in question embraces within its provisions all lands of the district which naturally and reasonably belong to the same class and that are similarly situated and used, and that it does not arbitrarily select only a portion of the lands which rationally belong to the same class, and taxes them, and omits other lands of the same class.

If the record showed that the ordinance embraced all of the lands that belonged to the same natural class, as contended for by respondents, then the ordinance would not be obnoxious to that constitutional provision.    The laws of the State do not offend against that provision if all persons and things that are subject to them are treated alike under similar circumstances and conditions in respect to both the privileges con-

ferred and liabilities imposed. [Andrus v. Ins. Assn., 168 Mo. 151, l. c. 163; Railroad v. Mackey, 127 U. S. 209; Railroad v. Mathews, 165 U. S. 25; Plessy v. Ferguson, 163 U. S. 550; Railroad v. Humes, 115 U. S. 512.]

It is argued that the class of land embraced within the terms of the ordinance does not belong to the same class that the lands which are not assessed belong to, but learned counsel for respondents has not pointed out the distinguishing features that separate the lands into two natural classes. If they are to be classified according to ownership or by the purposes for which they are being used, then the classification might be extended so as to exempt the property of telegraph, telephone, express and steamboat companies. And if that extension can be made without infringing upon that section of the Constitution, why might it not reach out still further and take in the property of insurance and banking corporations, or that of any other corporation or individual upon whom the friendly smiles of the city council might perhaps gently fall? Or, if any one or all of those things may be done, what would prevent the council from changing its mind, transfer its affections, become more just, and shift the burden of taxation from the shoulders of those who have borne it for the last decade and saddle it upon the property which has escaped this taxation, through this favoritism, for the next ten years, and thereby correct the injustice and discrimination heretofore done?

The answer to the question must obviously be nothing, for the reason that all of the property now exempt from taxation under the ordinance is, according to the Constitution and laws of the State, subject to taxation for these special benefits. This court has so held time and again, and it would be a useless waste of time to cite the decisions so holding. That being undeniably true, then from whence does the city council derive its

power to thus arbitrarily and unjustly discriminate between the different pieces of property that it will tax? It is not to be found in the bonds of the Union, in the Constitution or statutes of this State, nor in the charter of Kansas City. It is but an unauthorized, arbitrary, unjust usurpation of power; discriminating and oppressive in its effects, and clearly denies appellants the equal protection of the laws.

The foregoing views are fully supported by the case of St. Louis v. Heitzeberg Packing Co., 141 Mo. 375, which involved the validity of an ordinance of the city of St. Louis, commonly called the "smoke ordinance." In holding that ordinance void GANTT, J., speaking for the court, used this language: "On the other hand, if, as learned counsel suggests, the ordinance is not enforced in all its strictness, but much is left to the discretion of the inspectors, then we have an unregulated official discretion which of itself renders the ordinance void, for it cannot be tolerated that the rights of a citizen in this State shall depend entirely upon the caprice of any official, high or low. All valid ordinances must fix the duty or liability of the citizen by certain intelligible prescribed rules so that he may govern himself accordingly."

The difference between the question presented in that case and this is one of degree only, and not one of principle. There the ordinance permitted the inspector to fix and prescribe the rights of the citizen; and here, if respondents' contention that the charter of Kansas City authorizes the city council to determine what property shall or shall not be taxed for general purposes, or for local improvements, is right, it would be an equally unauthorized delegation of power, for the reason that all property must be taxed according to the Constitution and laws of the State, and not according to the caprice of the city council. If the city council has that power, then what is to prevent it from taxing

the real estate of railroads and that upon which churches, schools and court houses, etc., stand in one park district, and exempt it in another? The mere asking the question answers it; and refutes the contention of respondents and shows the injustice and absurdity to which it would lead if tolerated. It would open wide the door for the perpetration of injustice, fraud and oppression, and that too in plain violation of the Constitutions of the United States and of this State.

It is not denied that the city council has certain discretionary powers, but they are encompassed within certain well defined and known limits, and the power to determine what property may or may not be taxed is not one of those powers.

The same question came before the Supreme Court of the United States in the case of Yick Wo v. Hopkins, Sheriff, 118 U. S. 356. In that case the court held that the State was prohibited by the Constitution of the United States from delegating to the council such arbitrary power to pass such unjust and discriminatory ordinances; and in doing so used the following language:

"It is contended on the part of the petitioners that the ordinances for violations of which they, are severally sentenced to imprisonment, are void on their face, as being within the prohibitions of the Fourteenth Amendment; and, in the alternative, if not so, that they are void by reason of their administration, operating unequally, so as to punish in the present petitioners what is permitted to others as lawful, without any distinction of circumstances—an unjust and illegal discrimination, it is claimed, which, though not made expressly by the ordinances, is made possible by them.

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude

that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true, that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth 'may be a government of laws and not of men.' For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.

"There are many illustrations that might be given of this truth, which would make manifest that it was self-evident in the light of our system of jurisprudence. The case of the political franchise of voting is one. Though not regarded strictly as a natural right, but as a privilege merely conceded by society according to its will, under certain conditions, nevertheless

it is regarded as a fundamental political right, because preservative of all rights.

"In reference to that right, it was declared by the Supreme Judicial Court of Massachuetts, in Capen v. Foster, 12 Pick. 485, 489, in the words of Chief Justice SHAW, 'that in all cases where the Constitution has conferred a political right or privilege, and where the Constitution has not particularly designated the manner in which that right is to be exercised, it is clearly within the just and constitutional limits of the legislative power to adopt any reasonable and uniform regulations, in regard to the time and mode of exercising that right, which are designed to secure and facilitate the exercise of such right, in a prompt, orderly, and convenient manner;' nevertheless, 'such a construction would afford no warrant for such an exercise of legislative power, as, under the pretence and color of regulating, should subvert or injuriously restrain the right itself.' It has accordingly been held generally in the States, that, whether the particular provisions of an act of legislation, establishing means for ascertaining the qualifications of those entitled to vote and making previous registration in lists of such, a condition precedent to the exercise of the right, were or were not reasonable regulations, and accordingly valid or void, was always open to inquiry, as a judicial question. [See Daggett v. Hudson, 1 Western Rep. 789, decided by the Supreme Court of Ohio, where many of the cases are collected; Monroe v. Collins, 17 Ohio St. 665.]

"The same principle has been more freely extended to the quasi-legislative acts of inferior municipal bodies, in respect to which it is an ancient jurisdiction of judicial tribunals to pronounce upon the reasonableness and consequent validity of their by-laws. In respect to these, it was the doctrine that every by-law must be reasonable, not inconsistent with the charter

of the corporation, nor with any statute of Parliament, nor with the general principles of the common law of the land, particularly those having relation to the liberty of the subject or the rights of private property. [Dillon on Municipal Corporations (3 Ed.), sec. 319, and cases cited in notes.] Accordingly, in the case of State ex rel. v. Cincinnati Gas-Light and Coke Company, 18 Ohio St. 262, 300, an ordinance of the city council purporting to fix the price to be charged for gas, under an authority of law giving discretionary power to do so, was held to be bad, if passed in bad faith, fixing an unreasonable price, for the fraudulent purpose of compelling the gas company to submit to an unfair appraisement of their works. And a similar question, very pertinent to the one in the present cases, was decided by the Court of Appeals of Maryland, in the case of City of Baltimore v. Radecke, 49 Md. 217. In that case the defendant had erected and used a steam engine, in the prosecution of his business as a carpenter and box-maker in the city of Baltimore, under a permit from the mayor and city council, which contained a condition that the engine was 'to be removed after six months' notice to that effect from the mayor.' After such notice and refusal to conform to it, a suit was instituted to recover the penalty provided by the ordinance, to restrain the prosecution of which a bill in equity was filed. The court holding the opinion that 'there may be a case in which an ordinance, passed under grants of power like those we have cited, is so clearly unreasonable, so arbitrary, oppressive, or partial, as to raise the presumption that the legislature never intended to confer the power to pass it, and to justify the courts in interfering and setting it aside as a plain abuse of authority,' it proceeds to speak, with regard to the ordinance in question, in relation to the use of steam

engines, as follows: 'It does not profess to prescribe regulations for their construction, location, or use, nor require such precautions and safe-guards to be provided by those who own and use them as are best calculated to render them less dangerous to life and property, nor does it restrain their use in box factories and other similar establishments within certain defined limits, nor in any other way attempt to promote their safety and security without destroying their usefulness. But it commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the city of Baltimore, to cease to do so, and, by providing compulsory fines for every day's disobedience of such notice and order of removal, renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. But if he should not choose to do this, but only to act in particular cases, there is nothing in the ordinance to guide or control his action. It lays down no rules by which its impartial execution can be secured or partiality and oppression prevented. It is clear that giving and enforcing these notices may, and quite likely will, bring ruin to the business of those against whom they are directed, while others, from whom they are withheld, may be actually benefited by what is thus done to their neighbors; and, when we remember that this action or nonaction may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice capable of being brought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and

we are constrained to pronounce it inoperative and void.'

"This conclusion, and the reasoning on which it is based, are deductions from the face of the ordinance, as to its necessary tendency and ultimate actual operation. In the present cases we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford, of unequal and unjust discrimination in their administration. For the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. This principle of interpretation has been sanctioned by this court in Henderson v. Mayor of New York, 92 U. S. 259; Chy Lung v. Freeman, 92 U. S. 275; Ex parte Virginia, 100 U. S. 339; Neal v. Delaware, 103 U. S. 370; and Soon Hing v. Crowley, 113 U. S. 703.

"The present cases, as shown by the facts disclosed in the record, are within this class. It appears that

both petitioners have complied with every requisite, deemed by law or by the public officers charged with its administration, necessary for the protection of neighboring property from fire, or as a precaution against injury to the public health. No reason whatever, except the will of the supervisors, is assigned why they should not be permitted to carry on, in the accustomed manner, their harmless and useful occupation, on which they depend for a livelihood. And while this consent of the supervisors is withheld from them and from two hundred others who have also petitioned, all of whom happen to be Chinese subjects, eighty others, not Chinese subjects, are permitted to carry on the same business under similar conditions. The fact of this discrimination is admitted. No reason for it is shown, and the conclusion cannot be resisted that no reason for it exists except hostility to the race and nationality to which the petitioners belong, and which in the eye of the law is not justified. The discrimination is, therefore, illegal, and the public administration which enforces it is a denial of the equal protection of the laws and a violation of the Fourteenth Amendment of the Constitution."

Conceding that the charter of Kansas City gives to the city council the power contended for by learned counsel for respondents, then, according to the last authority cited, it would be clearly violative of the Fourteenth Amendment, because it would authorize the council to make the unjust discrimination before pointed out.

But in my opinion the charter grants no such capricious power to the city council. I believe, as stated in the former part of this opinion, it requires the council to assess all the real estate of the district, and not all or parts as it may see proper to do. If that is true, then the charter provision is not void because it violates the Fourteenth Amendment in that particular; but the

ordinance is clearly void because it is in conflict with the charter and said constitutional provision.

I am, therefore, of the opinion that the judgment should be reversed, and that a decree should be here entered adjudging said tax bills null and void and of no force or effect.

*Burgess* and *Graves, JJ.,* concur.