EGYPTIAN LEVEE Co. Respondent, v. HARDIN, Appellant.

EGYPTIAN LEVEE Co. Respondent, v. CUMMINS, Appellant.

27 495
96 506
27 495
34a 534
27 495
110 380
110 455
27 495
65a 114
27 495
72a 275
27 495
146 564
27 495
170 [2]251
170 [2]257

1. That provision of the constitution of the state of Missouri, which requires all property subject to taxation to be taxed in proportion to its value, is applicable only to taxation in its usual, ordinary and received sense, to taxation for general state, county, city and town purposes, not to local assessments, where the money raised is expended on the property taxed.

2. The act of February 27, 1855, (Sess. Acts, 1855, p. 73; also Adj. Sess. 1855, p. 28,) authorizing the Egyptian Levee Compeny, thereby incorporated, for the purpose of reclaiming a certain district from inundation by leveeing, ditching and embanking, to levy a tax *per acre* (not exceeding fifty cents) upon the land owners within said district, is constitutional; it is not in conflict with that provision of the constitution requiring that all property subject to taxation shall be taxed in proportion to its value.

*Appeals from Clark Circuit Court.*

*Bush,* for appellants.

I. The charter, so far as it authorized a tax per acre, is unconstitutional. (Constitution of Missouri, art. 13, § 19.) This provision applies to counties and all corporations created by the act of the legislature, as much as it does to the state in raising revenue for state purposes. The state not possessing the power to levy an " acre tax," it could not delegate this power. If it can delegate the power to a special corporation, it can authorize a county court to raise a revenue for county purposes by a tax per acre.

*Cowgill & Givens,* for respondent.

NAPTON, Judge, delivered the opinion of the court.

These cases involve the same question. For the purpose of reclaiming from liability to inundation a district of country between the Des Moines, Fox and Mississippi rivers, in Clark county, a company was chartered by the legislature in 1855 (Sess. Acts, 1855, p. 74), authorized to construct levees and dig canals, and raise the fund necessary for such

construction by a tax, not to exceed fifty cents per acre, upon the landholders in the district embraced within the charter. Each land-owner was allowed a vote, in the control of this work, for every forty acres of land he owned in the limits. The towns of Alexandria and Churchville, with their additions, were excepted from the operation of the charter, although within the district of country embraced by it. At a subsequent session of the legislature, the charter was altered so as to authorize the tax to be as high as one dollar per acre. These suits were brought to recover some of these assessments, and the defence was, that the act of the legislature was unconstitutional because the land was taxed by the acre and not in proportion to its value.

That provision of our state constitution, which requires taxation to be proportioned to the value of the property on which it is laid, is only applicable to taxation in its usual, ordinary and received sense, and is therefore limited to taxation for general purposes alone, where the money raised by the tax goes into the state treasury, or the county treasury, or the general fund of some city or town, and is applicable to any purpose to which the legislative body of such state, county or town may choose to apply it; and is not intended to apply to local assessments, where the money raised is to be expended on the property taxed. These local assessments are not necessarily, under our constitution, apportioned by reference to the value of the property assessed, but may be regulated by the value of the benefit which the improvement, to which the money is devoted, is expected to confer on the proprietor. Legislative sanction of such assessments is usually brought about by the action of the parties interested, and it is for the legislature to determine in what ratio the burden shall be distributed. It ought to be according to the value of the benefit to be derived; but, if the plan adopted should not, in the opinion of the judiciary, attain the object, it is still not their province to interfere.

This restriction in our constitution is not without precedent; and the construction here given to it is sanctioned by

authority. Judge Martin says, in the case of the State v. New Orleans Nav. Co., 11 Mart. 309, " These words [impost, tax or duty] must be confined to the idea which they commonly and ordinarily present to the mind, exactions to fill the public coffers, for the payment of the debt, and the promotion of the general welfare of the country, not to a contribution provided to defray the expenses of building bridges, erecting causeways, or removing obstructions in a watercourse, to be paid by such individuals only who enjoy the advantages resulting from such labor and expense." The ordinance of 1787 declared that " all the navigable waters leading into the St. Lawrence and Mississippi, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the territory as the citizens of the United States or those of any other state that may be admitted into the confederacy, without any *imposts, tax or duty* therefor." This provision was literally copied in the act of Congress of March 2, 1805, and it was held in the case from which Judge Martin's remarks have been transcribed that the charter of the New Orleans Navigation Company, which authorized a tax to be levied on vessels navigating the Mississippi for the purpose of raising a fund to be applied to the improvement of that navigation, was not a tax or impost or duty within the meaning of the act of Congress or the ordinance from which it was copied. In Crowley v. Copley, 2 Louis. Ann. 329, the same principle was decided. A law of that state required the owner of land on the Mississippi to construct levees or embankments; and, if the owner failed to construct or keep in repair his portion of the levee, an officer, called the district inspector, had the levee built or repaired and assessed the cost upon the land of the delinquent proprietor. This assessment was held not to be within the act of Congress, which exempted from state taxation all public lands of the United States for five years after they were sold under the directions of Congress. In the case of the Northern Liberties, &c., v. St. John's Church, 1 How. 10, the supreme court of Pennsylvania gave the same

construction to the word " tax," and held that an exemption of church property from taxation was only applicable to taxation of a general character, and did not exempt the property from local assessments appropriated to the improvement of the property itself. The court said : " Taxes are a public imposition, levied by authority of the government, for the purpose of carrying on the government in all its machinery and operations. They are imposed for a public purpose; whereas municipal charges are often for the benefit of lot-holders on a particular street, and the assessment, as in this instance, induced by the request, made known according to the charter, of a majority of the inhabitants." In the matter of the Mayor of New York, 11 Johns. 80, the same question arose and the same conclusion was reached as in the case of St. John's Church ; and the court said upon this question : " The word 'taxes' means burdens, charges or impositions put or set upon persons or property for public uses, and this is the definition which Lord Coke gives to the word ' talliage;' (2 Co. Inst. 532;) and Lord Holt, in Carth. 438, gives the same definition in substance of the word ' tax :' To pay for the opening of a street in a ratio to the benefit or advantage derived from it is no burden. It is no talliage or tax within the meaning of the exemption. The provisions of the act refer to general and public taxes to be assessed and collected for the benefit of the town, county or state at large." The propriety of the distinction taken in these cases was recognized by this court in the case of Lockwood v. The City of St. Louis, 24 Mo. 20, and in Garrett v. The City of St. Louis, 25 Mo. 505.

In every form of taxation, whether general or local, it is certainly desirable and proper that the burden should be distributed as near as may be in proportion to the benefit derived; and constitutional injunctions and restrictions, where they have been attempted on this subject at all, are designed to promote this end. But where there is an absence of constitutional provisions, it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more

just than the one adopted by the legislature. The latter department of government is wisely entrusted with the entire control of this subject; and if practical injustice is done, the remedy is in the hands of the people. Equality of taxation may however be regarded as one of those Utopian visions, which neither philosopher nor legislator has ever yet realized. Approximation may be arrived at and ought to be, and to a reasonable extent attained; but such is the infinite variety and complexity which human transactions assume that it surpasses the ingenuity of the political economist and practical politician to foresee exactly where and how the pressure of a proposed tax will fall. The present case may be taken as an illustration, and will show the folly of judicial interference. The charter of the Levee Company requires the tax to be regulated by the number of acres and not their value. This, upon first impressions, might carry an appearance of injustice; but it is not very easy, from all the facts disclosed in the record of this case, to infer that any practical injustice whatever has been done. Lands in the neighborhood of Alexandria are rated at seventy-five dollars an acre, and, for aught that appears, were so rated before the company was organized. The lands of the complainants are only estimated at twenty dollars per acre. If the improvement increases the value of each class of lands *pari passu*, there is no injustice. If the levee or embankment and canals raise the price of Alexandria lands to seventy-five dollars per acre, and increase the value of the complainant's land, distant perhaps fifteen miles from Alexandria, to twenty-five dollars an acre, where is the hardship complained of? Where lands were unequal in value before the proposed adventure or improvement, it was surely not the purpose of the company to bring these lands to an equality of valuation. It was not contemplated that land worth twenty dollars an acre should be brought up to a hundred, at the same time that land worth previously seventy-five dollars an acre should be raised to one hundred dollars per acre. This difference in value, if it arose from causes entirely independent of the overflow or

its prevention, must of course still continue after the completion of the works. Neither party has a right to complain if the increase of value in each has been in the same proportion to the original value in both cases. Indeed it is quite apparent that a taxation upon value and not quantity would in the hypothesis stated produce great inequality. The burden would not be distributed in proportion to the benefit. How this may be in point of fact, we of course do not pretend to know; but there is nothing in the record to show that the facts may not be exactly as we have supposed.

The other judges concurring, the judgment is affirmed.