COLUMBIA BOTTOM LEVEE COMPANY, Respondent, v. FREDER-
ICK MEIER, Appellant.

1. *Corporations—Revenue—Constitution.*—Hardin v. Egyptian Levee Co., 27
Mo. 495, affirmed.
2. *Corporations—Powers.*—Whenever it is shown that a corporation is duly
organized in accordance with the statute giving it an existence, the com-
pany becomes duly authorized to carry out the purposes of its creation.
3. *Corporations—Constitution—Assessments.*—A corporation created for the
purpose of executing some work of public utility may be invested with the
power of raising the funds necessary for the work by assessments upon the
property to be benefited, and it is of no consequence whether the party
owning the land assessed be a member of the corporation or not. In a suit
to collect the amount thus assessed, the defendant cannot set up as a defence
that the work was not properly done.
4. *Corporations—Elections.*—A majority of the corporators actually voting at
an election for directors is sufficient to elect.

*Appeal from St. Louis Law Commissioner's Court.*

The case was brought by plaintiff to recover from defend-
ant an assessment laid upon him as one of the company, and
as owner of certain land within the Columbia bottom. The
company was chartered by the act of March 8, 1859, which
created the corporation and named the directors (Sess. Acts
1859, p. 284) ; and its charter was amended by act approved
January 14, 1860 (Sess. Acts 1859–60, p. 214). The board
of directors of the company was elected February 10, 1860,
and on 21st February, 1860, they made an assessment on all
the owners of land within the limits mentioned in the char-
ter, of $1.75 per acre, for that year, for the purpose of con-
structing the levee. This assessment the defendant paid.
On the 2d day of March, 1861, the board of directors made
another assessment of $2 per acre on the said land owners.
This assessment the defendant refused to pay, and this suit
was brought to enforce payment.

The defendant set up as a defence that he was not a mem-
ber of the corporation; that the company had not been le-
gally constituted ; that the directors making the assessment
had not been legally elected, and that the work, to pay for

which the assessment was levied, had not been properly done.

*Voorhies* and *Mason,* for appellant.

I. The court below improperly struck out such parts of the answer as set up the failure and inadequacy of the works proposed under the charter.

The preamble of the first act reveals the objects of the charter, to-wit, to protect the lands defined from overflow and to increase their value. The preamble of the second act develops the same purposes. The bodies of the acts also reveal these ends and purposes; the proceedings of this case develop the same things.

The court improperly rejected evidence offered by the defendant to prove the impracticability and inadequacy of the levee. These acts constitute a contract between the adventurers constituting the company and the public, or the parties proposed to be benefited, to-wit, the land owners—Stonebridge Canal Co. v. Whirly, 2 Barn. & Adol. 703; Kingston-upon-Hull Dock Co. v. La Marche, 8 B. & C. 42; 4 Pet. 152.

The acts being a contract, such contract must necessarily be subject to the incidents of a contract in relation to the subject matter and the consideration just as an ordinary contract. It must necessarily follow that if the intention of the Legislature cannot be carried out—or, in other words, is a failure—the contract is a nullity and cannot be enforced against the defendant.

The defendant was not a member of the company. The plaintiff could produce no evidence on that point, save that he had paid the first assessment; which does not make him a member or impose any obligation upon him to pay any additional assessments.

It clearly appears from the whole enactments by the Legislature that the company was empowered to do specific things, to-wit, to assess taxes to protect the lands from overflow, to drain the same so as to enhance the value thereof. If from the nature of the case these objects are unattainable, there

is no power to go on taxing forever, when there is not only no benefit, but absolute detriment—Beatty v. Knowles' Lessee, 4 Pet. 152.

II. The production of the records of the company to show that all previous steps had been taken in conformity to the acts for its organization, was only *prima facie* evidence, and the defendant had the right to show any non-conformity—2 Barn. & Ald. 703 ; 4 Pet. 152.

The records simply state that " in accordance with an advertisement published in the *St. Louis Republican* an election was held at the court-house in St. Louis, February 10, 1860, for directors of the Columbia Bottom Levee Company, of St. Louis county, Missouri." Such notice was insufficient, 1. Because it does not appear at whose instance the notice was given. The law is explicit, and says the time and place of election must be designated by the persons named, or a majority of them. 2. Because a mere publication in a newspaper twenty miles distant from the residence of some of the land owners can impart no notice. There should have been a written notice delivered to every individual entitled to vote at the election for directors, otherwise the action at such meeting is not binding on persons not present—Ang. & A. on Corp. (Ed. 1858) § 492, and authorities there cited.

III. The acceptance of the amendatory act, passed 14th January, 1860, does not bind a member of the company who did not assent to it, even though a majority may have assented. Much less can such amendment bind the defendant, who never consented to the original act, and therefore never was a member of the company.

The amendment makes a fundamental change in the stipulations of the charter, affecting materially the liability of the members. If the defendant had joined in the petition to the Legislature and thereby become a member under the first act, the contract in that first act which would have existed between him and the company is impaired in its obligations to such extent by the amendment, and so varied, that it could have no binding force upon him—New Orleans, J. &

G. N. R.R. Co. v. Harris, 27 Miss. 517 ; *Ex parte* Johnson, 31 Eng. L. & Eq. 430 ; Ang. & A. on Corp. 537, 539.

IV. The payment of the first assessment does not of itself constitute the defendant a member of the company, or impose upon him an obligation to pay any future assessments.

V. The acts are unconstitutional.

1. The Legislature had no right under the old Constitution to appropriate public revenue, raised by taxation for the purpose of carrying on the government, to private use ; that power is attempted to be given in sections 4 and 5 of the amendatory act.

2. The Legislature in these acts has attempted to delegate the right of eminent domain to this company. It has attempted to give to the company the same power it possesses over the estates of individuals for the collection of public revenue by taxation. It is a settled principle in private corporations (this is none other than a private corporation, though the first act is declared a public act) that the members are liable for the debts of the company only to the amount of their interest in the fund or property. But this company is an anomaly ; it has no stock, no fund. It is not limited to a lien on the land of members within its limits, but may seize upon any property they may have, real or personal, to pay assessments.

*Glover & Shepley* and *Flournoy*, for respondent.

FAGG, Judge, delivered the opinion of the court.

The professed object of the act incorporating the Columbia Bottom Levee Company was to reclaim certain lands adjacent to the Missouri and Mississippi rivers, in the county of St. Louis, from liability to overflow. The designated limits embraced a large amount of land belonging to a number of different proprietors, and in the preamble to the act it is assumed to be passed upon their application. The first board of directors is designated in the act and the manner of their organization pointed out. Whenever, therefore, it is shown

that the said organization did take place as directed, there was a legally constituted company in existence duly authorized by the act to proceed at once to carry out the purpose of its creation. There can be no question now as to the power of the Legislature to create such a company, and to invest it with all the necessary power and authority to construct whatever works may be necessary to accomplish the object intended, and to raise the funds to pay for the same by assessments on the lands to be benefited thereby. This question was fully discussed and determined in the case of Egyptian Levee Co. v. Hardin, 27 Mo. 495.

The appellant here (defendant below) insists that he was not a member of the company, and cannot be held liable to its assessments unless he had expressly given his assent to the exercise of such a power by an acceptance of the charter. The power of the Legislature to delegate the authority to this company to levy a tax or assessment for the purposes indicated being settled, it follows necessarily that his assent or dissent is a matter of no consequence. The act is evidently passed upon the idea that it is a work of sufficient public utility to require its execution and to justify the incorporation of a company with the powers granted by it. The power to levy an assessment upon the lands in question is not to be understood as a power to tax in the ordinary meaning of that term. It is the power to compel the payment of a sum limited by the terms of the law as a compensation for a direct benefit conferred.

Suppose that the State itself had undertaken to do this work. Will it be pretended that there is no power to compel the owners of the land to pay a tax sufficient to compensate for the actual amount of benefit received by them? If the State can do it, certainly it can delegate the power to a company to do the same thing.

Upon the idea, then, that there was a public necessity for this work—and the Legislature must be the judge of that matter—and that it would result in direct benefit to the lands designated by the act, there can be no hardship upon indi-

viduals when the rate of assessment is equal and the terms are fixed by which they can have a voice in controlling the affairs of the company. The work to be constructed and the general management and control of all matters pertaining to the business of this company must of necessity be left to the board of directors. If the board exceeds its authority, or attempts to do anything manifestly injurious or oppressive to the land owners in question, there is no doubt of the existence of a remedy for such evils; but the character of the work done under its supervision and by its authority cannot be the subject of investigation in a suit like this, and that portion of the answer which undertook to set up the insufficiency of the work as a defence was properly stricken out. Having disposed of this question, it will not be necessary to notice what is said in reference to the exclusion of testimony tending to prove that part of the answer. It was rightly excluded.

It is insisted that there was error in the exclusion of testimony offered by the defendant tending to prove that the organization of the company by the election of its board of directors was illegal, for the reason that less that one half of the land in question was represented by the persons voting at said election. But this cannot be material. The first board of corporators had been duly organized as required by law, and the second board, as shown by the records of the company, was elected by the votes of a majority of the land owners in the district. The first assessment made by the board had been paid by a large majority of the proprietors of the land, including the defendant Meier. Now, if it be admitted for the sake of the argument that there was error in excluding the testimony, still he is not prejudiced, for the reason that it was abundantly shown that a large majority did acquiesce in what was done by the board; thus furnishing sufficient evidence, if any were necessary, to show their acceptance of the charter; and the defendant is bound whether he directly assented or not. The act of incorporation does not require a majority of votes of all the land owners to

elect a board of directors. It prescribes the qualifications of voters simply, and a majority actually voting would be sufficient to elect ; and a board of directors thus chosen would be fully authorized to act, if the election should be in other respects regular.

Some other points are made by the appellant's brief, but, as they do not appear properly upon the record, it is not necessary to consider them.

The other judges concurring, the judgment of the court below will be affirmed, with ten per cent. damages.