LOUIS HOUCK et al., Appellants, v. LITTLE RIVER DRAINAGE DISTRICT et al.

In Banc, March 1, 1913.

1. **CORPORATIONS: Public: Drainage Districts: Powers:. Taxation.** The State has the power to create corporations for the purpose of reclaiming or improving swamp and overflowed lands. Such instrumentalities may be invested with power and authority to construct and maintain whatever works may be necessary to accomplish their object, and to raise the funds to pay for the same by assessment on the lands to be benefited thereby.

2. ————: ————: ————: **Special Taxes: Constitutional Question.** The special taxes which drainage corporations in Missouri are authorized to levy and collect upon and for the benefit of the lands included in their districts do not come within the provisions of article 10 of the Missouri Constitution, entitled "Revenue and Taxation."

3. **TAXATION: Legislative Discretion: General and Special Taxes.** The taxing power is an incident to every function of the State, but under our system of government it cannot stand alone. Every tax must rest on a public purpose to which its proceeds must be devoted. General taxation compensates the taxpayer with all the advantages of government. In selecting the subjects of general taxation and in the assessment and levy of the taxes, the discretion of the Legislature, subject only to the Constitution, must be full and untrammeled; otherwise revenue laws would never pass the region of judicial debate into the region of execution. And this discretion applies equally to the field of special taxation.

4. ———: ———: ———: Benefits. The right to tax through governmental agencies, such as drainage corporations, depends upon the truth that the development of the lands of the State in productiveness and value, as well as the promotion of the health and comfort of the people, is a matter of governmental concern; and where such improvements are made necessary by local conditions which greatly impair the value of the lands of an entire district, and the primary result of their accomplishment will be a corresponding benefit to all, experience has shown that the State is the only power that can so combine the elements involved that each may bear a fair and just proportion of the cost. That this proportion should bear some relation, in theory at least, to the benefits accruing to the property, seems fair and just, and is the general result towards which the legislative efforts are directed.

5. ———: ———: ———: ———: Drainage Districts: Manner of Assessment. The Legislature of Missouri may fix the territorial limits of special taxing districts, and may also fix the actual or maximum amount of special assessments, which it may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon a proceeding to ascertain the actual benefit accruing to each particular tract; or it may delegate any or all of these powers to an appropriate agency to be chosen or created by it. When all this has been done by valid legislation, the owner of property in the district cannot be heard to contend that his property was not in fact benefited, or that the benefit was less than the amount assessed.

6. ———: ———: ———: ———: Sec. 5538, R. S. 1909: Constitutional Question. Section 5538, R. S. 1909, provides: "As soon as any drainage district shall have organized under order of the circuit court, and a board of supervisors are elected and qualified, such board of supervisors shall have the power and authority to levy upon each acre of land in the district, not to exceed twenty-five cents per acre, as a level rate, to be used for purpose of paying expenses of organization, for topographical and other surveys, for plans of drainage, for expenses of assessing benefits," etc., "before entering upon the main work of drainage. Any district which may have proceeded without such levy may . . . make such level assessment, . . . and such levy may be made although the work proposed may have failed or have been found impractical." *Held*, that the section is constitutional. If it be objected that no judicial finding of benefits is required, it will be answered that the Legislature has seen fit to entrust to the judicial department the establishment and territorial limitation of the benefit district in a proceeding in which the question whether or not each tract included will be benefited is directly involved. Having expressed its will as to the principles which should govern the distribution

of these taxes upon the land so found to be benefited the Legislature has left the necessary amount of the assessments to be ascertained by the authorities of the district, as it leaves like questions of municipal taxation to its municipal. agencies. Again, if it be objected that it *might* be developed by the work, and therefore it must be assumed to have been contemplated by the law, that there will be no resulting increment, which, under the name of benefits, constitutes the only constitutional support for this class of taxation, it will be answered that, when the organization of a drainage district has reached the stage where the tax in question may be levied, the situation is: The Legislature has designed an important public work and has found that its accomplishment will result in such benefit to the lands included in its scope as to justify the assessment of the entire cost as a special tax against them. The power to tax necessarily includes the power to raise the money in such time and manner as is necessary to accomplish the purpose for which the tax is levied.

7. **CORPORATIONS: Charter: Retrospective Laws: Obligation of Contract.** The charter of a public corporation does not constitute a contract with its members that the laws it was created to administer will not be changed; and the State is still at liberty, as to them and as to the corporation, to continue, for example, its efforts to improve its methods of taxation.

Appeal from Cape Girardeau Circuit Court.—*Hon. Charles B. Faris*, Judge.

AFFIRMED.

*Giboney Houck* and *Davis & Hardesty* for appellants.

(1) "The constitutionality of a law is to be tested not by what has been done but what may by its authority be done." Stuart v. Palmer, 74 N. Y. 183; Agens v. Mayor, 37 N. J. L. 420; Norwood v. Baker, 172 U. S. 269. (2) Sec. 5538, R. S. 1909, violates sections 21 and 30 of article 2 of the State Constitution and amendment 5 and section 1 of amendment 14 of the United States Constitution by depriving plaintiffs of property for public use without compensation and without due process of law. (a) Due process of law includes the idea of compensation for property taken for

public use. Railroad v. Chicago, 166 U. S. 241; Water Supply Co. v. Brooklyn, 166 U. S. 695; Norwood v. Baker, 172 U. S. 269. (b) "Special assessments" are unconstitutional unless founded upon either a legislative or a judicial finding of "special benefits," i. e. "compensation," for the assessment exacted for public use. Morrison v. Morey, 146 Mo. 561; Land & Stock Co. v. Miller, 170 Mo. 249; Levee Co. v. Hardin, 27 Mo. 496; St. Louis v. Oeters, 36 Mo. 456; Kansas City v. Ridenour, 84 Mo. 258; St. Joseph v. Anthony, 30 Mo. 537; St. Louis v. Rankin, 96 Mo. 497; Independence v. Gates, 110 Mo. 374; Kansas City v. Ward, 134 Mo. 172; Clinton ex rel. v. Henry County, 115 Mo. 557; Norwood v. Baker, 172 U. S. 269. (c) A legislative finding of such "special benefits" under section 5538, in the case at bar, will be vacated as a thing palpably false. Norwood v. Baker, supra; McCormick v. Patchin, 53 Mo. 36; Zoeller v. Kellogg, 4 Mo. 163; Corrigan v. Gage, 68 Mo. 541; Cooley on Taxation (2 Ed.), chap. 20; Hammett v. Philadelphia, 65 Pa. St. 146; Agens v. Mayor, 37 N. J. L. 416; Davidson v. New Orleans, 96 U. S. 97; Loan Ass'n v. Topeka, 20 Wall. (U. S.) 655. (d) No judicial finding on the amount of "benefits" assessable to the land is, by any section of the drainage law, required, or provided for, as a foundation for levying the assessment under section 5538. Secs. 5496 to 5499, 5519 and 5538, R. S. 1909; Charles v. City of Marion, 98 Fed. 166; Moss v. Whitzell, 108 Fed. 579; Railroad v. Chicago,166 U. S. 241; Davidson v. New Orleans, 96 U. S. 104; Cooley on Constitutional Limitations, pp. *356, *357; 2 Story's Const. (Cooley's Ed.) sec. 1956; Stuart v. Palmer, 74 N. Y. 191; Violett v. Alexandria, 92 Va. 561. (3) The benefit principle being absent from sec. 5538, the assessment therein provided for is clearly general, and, if general, then violative of the Missouri Constitution in respect to section 3 of article 10 requiring taxes to be uniform, section 4 of article 10 requiring all prop-

erty to be taxed in proportion to its value, and sections 11 and 12 of article 10 limiting the amount of the aggregate rates of taxation. Agens v. Mayor, 37 N. J. L. 416; Norwood v. Baker, 172 U. S. 269; Morrison v. Morey, 146 Mo. 564. (4) Its retrospective character is another reason why section 5538 conflicts with the "due process of law" requirement of both the State and Federal Constitutions. Furthermore, being retrospective, it impairs the obligation of contracts in violation of section 15 of article 2 of the State and section 10 of article 1 of the Federal Constitution, and comes within the direct prohibition of section 15 article 2 of the Missouri Constitution, forbidding retrospective legislation. Leete v. Bank, 115 Mo. 200; Westervelt v. Gregg, 12 N. Y. 202; Norris v. Beyea, 13 N. Y. 273; Holmes v. Holmes, 4 Barb. 295; St. Louis to use v. Clemens, 52 Mo. 144; In re Pell, 171 N. Y. 48; State ex rel. v. Adams, 44 Mo. 570; Dartmouth College v. Woodward, 4 Wheat. 518. (5) If this court declare the "preliminary information" constitutes a "betterment to the land" which can be taxed as a "benefit," it takes a position adverse to all prior adjudications on kindred cases in England and America. The single case cited by respondents (Railroad v. Pierce, 23 L. R. A. [N. S.] 286) intensifies this statement, for the preliminary tax was there laid by virtue of an election within the district, and the tax was therefore voluntary and self-imposed. Furthermore, this court would be bound to recede from the doctrine in the future application of such a principle to public improvement cases constantly coming before this court. Kansas City v. O'Connor, 82 Mo. App. 660, shows one line of cases that would have to be overruled in order to uphold this law, namely, those declaring special assessments for sprinkling invalid for lack of the benefit principle. Kansas City v. Railroad, 28 L. R. A. (N. S.) 669, is the most important decision on which we rely—a decision by this court—

virtually declaring that the landowner must be guaranteed the "special benefits" for which he is charged, before this court will uphold an assessment for such special benefits. But the law in question boldly says it ignores the principle of benefits. If this court upholds this law it will overrule and upheave its adjudications on public improvements and then later on be bound to come back to those adjudications and reinstate them.

Oliver & Oliver for respondents.

(1)   The Legislature may by its own act fix the territorial limits of special assessment districts, and by its own act determine the amount of. the assessment, or the Legislature may delegate those powers to an agency created by it. Drainage Dis. v. Railroad, 139 S. W. 330; Land and Stock Co. v. Miller, 170 Mo. 240; Levee Co. v. Hardin, 27 Mo. 495; Levee Co. v. Meier, 39 Mo. 53; Morrison v. Morey, 146 Mo. 543; Prior v. Construction Co., 170 Mo. 439; Asphalt Co. v. French, 158 Mo. 534; Meier v. St. Louis, 180 Mo. 391; Heman v. Railroad, 206 Mo. 179; Heman v. Allen, 156 Mo. 534; Spencer v. Merchant, 125 U. S. 345; French v. Asphalt Co., 181 U. S. 324; Webster v. Fargo, 181 U. S. 394; Ross v. Supervisors, 1 L. R. A. (N. S.) 431; Caton v. Drainage Dis., 112 S. W. 145; Cooley on Taxation (1 Ed.), p. 449.   (2)   It is within the power of the Legislature to charge the property within the special assessment district, at a level rate, with the cost of the improvements, and apportion the same either according to the front foot rule, or according to the area (acreage) rule. In either event it acts within constitutional limits. Drainage Dis. v. Railroad, 139 S. W. 330; Levee Co. v. Hardin, 27 Mo. 495; Levee Co. v. Meier, 39 Mo. 53; Prior v. Construction Co., 170 Mo. 448; Meier v. St. Louis, 180 Mo. 391; Asphalt Co. v. French, 158 Mo. 534; N. P. R. Co. v. Pierce Co., 23 L. R. A. (N. S.) 286; Paving Co v.

Fair Assn., 231 Mo. 589; Pleadwell v. Glass Co., 151 Mo. App. 51; Construction Co. v. Shovel Co., 211 Mo. 531; Spencer v. Merchant, 125 U. S. 345; French v. Asphalt Pav. Co., 181 U. S. 324; Wright v. Davidson, 181 U. S. 371; Farm Co. v. Detroit, 181 U. S. 395; Detroit v. Parker, 181 U. S. 399; Webster v. Fargo, 181 U. S. 394; Munsen v. Board, 43 La. Ann. 15; Wallace v. Shelton, 14 La. Ann. 498; Caton v. Drainage Dis., 112 S. W. 145; Sheley v. Detroit, 45 Mich. 431; Cremer v. Allen, 3 Mo. App. 548; Cooley on Taxation (1 Ed.), p. 454. (3) The Legislature may apportion the cost of the improvement upon the property in the district according to the frontage or area rule without judicial inquiry as to the value or benefits the property assessed will receive, and this will not constitute a taking of private property without due process of law, under either State or Federal Constitution. Spencer v. Merchant, 125 U. S. 345; French v. Paving Co., 181 U. S. 324, 158 Mo. 534; Tonawanda v. Lyon, 181 U. S. 389; Webster v. Fargo, 181 U. S. 394; Farm Co. v. Detroit, 181 U. S. 395; Detroit v. Parker, 181 U. S. 395; Wormley v. District of Columbia, 181 U. S. 402; Shumate v. Heman, 181 U. S. 402; Heman v. Allen, 156 Mo. 534; Keithe v. Bingham, 100 Mo. 300; Smith v. Worcester, 182 Mass. 232; Heman v. Gilliam, 171 Mo. 264; St. Charles ex rel. v. Deemar, 174 Mo. 124; Meier v. St. Louis, 180 Mo. 391; Ross v. Gates, 183 Mo. 347; Asphalt Pav. Co. v. Munn, 185 Mo. 565; People ex rel. v. Pitt, 169 N. Y. 521; Arnold v. Knoxville, 115 Tenn. 210; Hagar v. Reclamation Dist., 111 U. S. 701; Cooley on Taxation (1 Ed.), p. 36; Prior v. Construction Co., 170 Mo. 439; Construction Co. v. Shovel Co., 211 Mo. 532; Williams v. Eggleston, 170 U. S. 304; Roofing Co. v. Fair Assn., 231 Mo. 589; Ross v. Supervisors, 1 L. R. A. (N. S.) 437; Page & Jones on Taxation by Assessment, sec. 123. (4) The constitutional provision prohibiting the taking of private property for public use without compensation, is

a limitation on the exercise by the State of the right
of eminent domain, and not a limitation on the taxing
power. Drainage District v. Richardson, 139 S. W.
576; Keith v. Bingham, 100 Mo. 306; Heman v. Schulte,
166 Mo. 419; St. Louis v. Buss, 159 Mo. 12; Gilman v.
Sheboygan, 67 U. S. 510; Dillon on Municipal Cor-
porations (3 Ed.), sec. 738; Page & Jones on Taxation
by Assessment, sec. 110; Construction Co. v. Shovel
Co., 211 Mo. 531; Asphalt Co. v. French, 158 Mo. 534;
181 U. S. 324; St. Joseph v. Farrell, 106 Mo. 437;
Cooley on Taxation (1 Ed.), p. 430, 431. (5) A legis-
lative determination of the benefits derived or the
necessity and advisability of a local assessment is con-
clusive and final, and is not subject to judicial review.
Prior v. Construction Co., 170 Mo. 451; Asphalt Co.
v. French, 158 Mo. 534, 181 U. S. 324; Levee Co. v.
Hardin, 27 Mo. 495; Chadwick v. Kelly, 187 U. S. 540;
St. Joseph v. O'Donoghue, 31 Mo. 345; Meier v. St.
Louis, 180 Mo. 391; Hagar v. Reclamation Dist., 111
U. S. 701; Railroad v. Paving Co., 197 U. S. 430;
Irrigation Dist. v. Bradley, 164 U. S. 112; People v.
Brooklyn, 4 N. Y. 419; Railroad v. Seattle, 12 L. R.
A. (N. S.) 121; Smith v. Worcester, 182 Mass. 232;
Spencer v. Merchant, 100 N. Y. 585, 125 U. S. 345;
Cooley on Taxation (1 Ed.), p. 446. (6) A legisla-
tive finding of benefits will be presumed, after an as-
sessment has been authorized. Both courts and legis-
latures take notice of the topography of the State, and
that wet, swampy lands subject to overflow will be
rendered more habitable and productive, and that the
public health will be benefited by removing the water
which causes the unhealthy conditions. Railroad v.
Seattle, 12 L. R. A. (N. S.) 121; Drainage Dist. v.
Railroad, 139 S. W. 330; Land Co. v. Miller, 170 Mo.
240; Construction Co. v. Shovel Co., 211 Mo. 554;
Prior v. Construction Co., 170 Mo. 439; Meier v. St.
Louis, 180 Mo. 391; Irrigation Dist. v. Bradley, 164
U. S. 112; Railroad v. Drainage Com'rs, 200 U. S.

561; Hagar v. Reclamation Dist., 111 U. S. 701; French
v. Asphalt Co., 181 U. S. 324; Railroad v. County, 23
L. R. A. (N. S.) 286; State ex rel. v. Commissioners,
60 L. R. A. 161; Smith v. Worchester, 182 Mass. 232;
Railroad v. Asphalt Co., 197 U. S. 430; Cooley on Tax-
ation (1 Ed.), p. 430, 450.    (7)  The act of the Legis-
lature in levying an assessment for a definite sum
against each lot of land for special improvements is
conclusive alike of the necessity of the work and of its
benefits to the property assessed, and the Legislature
in so doing is not compelled to give notice to the par-
ties resident within the district or to give a hearing
before itself, or one of its committees, or any other
tribunal, as to the question whether the property so
included within the district is in fact benefited. Par-
son v. District of Columbia, 170 U. S. 45; Goodrich
v. Detroit, 184 U. S. 432; Chadwick v. Kelly, 187 U. S.
540; Railroad v. Paving Co., 197 U. S. 430; Cooley on
Taxation (2 Ed.), p. 149; Williams v. Eggleston, 170
U. S. 304; Ramsey County v. Lewis Co., 82 Minn. 400;
Jones & Page on Taxation by Assessment, sec. 123.
(8)  "The provisions of article 10 of the Constitu-
tion of Missouri in regard to taxation, are applicable
to taxation in the ordinary acceptation of the term,
and are inapplicable to (these) special assessments."
Meier v. St. Louis, 180 Mo. 408; Farrar v. St. Louis,
80 Mo. 379; St. Joseph v. Owen, 110 Mo. 445; Mobile
Co. v. Kimball, 102 U. S. 691; Levee Co. v. Hardin,
27 Mo. 495; Cooley on Taxation (1 Ed.), p. 444; Page
& Jones on Taxation by Assessment, sec. 147; Con-
struction Co. v. Railroad, 206 Mo. 179.

BROWN, C.—This is a suit by the owners of lands
in the defendant drainage district, which was incorpo-
rated by the judgment of the Butler County Circuit
Court, November 30, 1907, under the provisions of ar-
ticle 3, chapter 122, Revised Statutes 1899, as amended
by the Act of April 8, 1905.  The object of the suit

is to enjoin the collection of a tax of twenty-five cents per acre upon the lands of plaintiffs, in common with other lands of the district, levied under the provisions of the Act of June 1, 1909, which is now section 5538, Revised Statutes 1909. The defendants demurred to the petition, and the issue of law so raised was tried upon the following stipulation:

"It is admitted that the only question in controversy in this cause is as to the constitutionality of section 5538 of the Revised Statutes of Missouri 1909.

"If the court should find on demurrer to plaintiffs' petition that section 5538 is a valid and legal section under the Constitution of Missouri and of the United States, the demurrer should be sustained and plaintiffs' bill dismissed.

"If on the other hand the court shall find said section violates either the Constitution of Missouri or of the United States, then said demurrer should be overruled and judgment entered accordingly. Each party reserves the right to appeal from the judgment of the said circuit court."

The demurrer was sustained and final judgment for defendants entered, from which this appeal is taken.

It was contended in the trial court that the section referred to (Sec. 5538, R. S. 1909) is in contravention of sections 3, 4, 11, and 12 of article 10, and sections 4, 15, 21 and 30, of article 2, of the Constitution of Missouri, and of section 1 of the Fourteenth Amendment to the Constitution of the United States. If this position is well taken on any of these grounds the judgment of the trial court should be reversed; otherwise it must be affirmed.

I. That the State, by the Legislature, has the power to create corporations for the purpose of reclaiming or improving swamp and overflowed lands by ditches and drains and levies, in districts

**Drainage Corporations.** prescribed by it, or to be ascertained and fixed by such appropriate instrumentalities as it may provide, is no longer a question in this State. Nor is it an open question that the instrumentality so created may be invested with all the necessary power and authority to construct and **Powers.** maintain whatever works may be necessary to accomplish such object, and to raise the funds to pay for the same by assessment on the lands to be benefited thereby. [Egyptian Leyee Co. v. Hardin, 27 Mo. 495; Columbia Bottom Levee Company v. Meier, 39 Mo. 53; Mound City Land & Stock Company v. Miller, 170 Mo. 240; Squaw Creek Drainage District v. Turney, 235 Mo. 80; Morrison v. Morey, 146 Mo. 543; State ex rel. v. Chariton Drainage District, 192 Mo. 517; State ex rel. v. Taylor, 224 Mo. 393; Little River Drainage District v. Railroad, 236 Mo. 94.] These corporations, as is said in the most of the cases cited, are, when formed, public subdivisions of the State, exercising the powers granted them for the purposes of their creation, within their territorial jurisdiction, as fully, and by the same authority, as the municipal corporations of the State exercise the powers vested by their charters. That the special taxes they are authorized to levy and collect upon and for **Taxation.** the benefit of the lands included in their districts do not come within the provisions of article 10 of the State Constitution invoked by the appellants; has long been settled, and has passed from the realm of legitimate discussion. Appellant contends, however, that the flat tax of twenty-five cents per acre has no relation whatever to benefits to the land so taxed. In other words, it must either be an assessment for benefits to the lands to which it is applied, or such a general tax for governmental purposes as is required by the Constitution to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and with respect to which

all property subject to taxation must be taxed in proportion to its value. No kind of governmental exaction imposed upon property under color of the taxing power, and lying between or outside these two classes, it is contended, constitutes due process of law, and every such exaction is a taking of private property for private use, or for public use without just compensation.

The taxing power is an incident to every function of the State, but under our system of government it cannot stand alone. Every tax must rest on a public purpose to which its proceeds must be devoted. The police powers on the other hand, as was said by Chief Justice WAITE in Munn v. Illinois, 94 U. S. 113, 125, quoting from Chief Justice TANEY in the License Cases, 5 How. 583, ''are nothing more or less than the powers of government inherent in every sovereignty, . . . that is to say, . . . the power to govern men and things.'' It calls to its aid the subordinate powers—the taxing power, and the power of eminent domain—and their extent is then measured by its purposes. These subordinate powers, each in its sphere, have for their purpose the absolute taking of private property for public use. General taxation compensates the taxpayer for this taking with all those advantages which result to him from the maintenance of the government; such as the protection of person and property, the making and execution of laws for the promotion of the general welfare of the people with respect to both person and property, and the general readiness of such an organization to meet all contingencies involving their interests. In selecting the subjects of this class of taxation, and in the assessment and levy of the taxes, it is not expected that even approximate perfection will be attained. The discretion of the Legislature, subject only to well-defined constitutional restrictions, must be full and untramelled; otherwise

*Public Purpose.*

revenue laws would never pass the region of judicial debate into the region of execution. They would be relegated to that field of discussion now occupied by theories being tried out in the forum of the people, to be adopted or rejected as the public judgment shall determine. In these respects the Legislature is within its discretion where it has kept in view those fundamental principles prescribed by the Constitution, and exercised the legislative judgment in the methods adopted for carrying them out. This legislative discretion applies equally to the field of special taxation which lies between the imposition of taxes for general governmental purposes and the exercise of the right to eminent domain, and sometimes so close to either that they seem to overlap and mingle.

The right to tax through governmental agencies in cases like this depends upon the truth that the development of the lands of the State in productiveness and value, as well as the promotion of the health and comfort of the people, is a matter of governmental concern; and where such improvements are made necessary by local conditions which greatly impair the value of the lands of an entire district, and the primary result of their accomplishment will be a corresponding benefit to all, experience has shown that the State is the only power than can so combine the elements involved, that each may bear a fair and just proportion of the cost. That this proportion should bear some relation, in theory at least, to the benefits accruing to the property, seems fair and just, and is the general result toward which the efforts of different legislatures, including our own, are directed. Referring to the legislative discretion in this respect, Judge NAPTON, in Egyptian Levee Company v. Hardin, 27 Mo. 495, 498, said:

*Special Taxes: Benefits.*

"In every form of taxation, whether general or local, it is certainly desirable and proper that the burden should be distributed as near as may be in proportion to the benefit derived; and constitutional injunctions and restrictions, where they have been attempted on this subject at all, are designed to promote this end. But where there is an absence of constitutional provisions, it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the Legislature. The latter department of government is wisely entrusted with the entire control of this subject; and if practical injustice is done, the remedy is in the hands of the people. Equality of taxation may however be regarded as one of those Utopian visions which neither philosopher nor legislator has ever yet realized."

That is probably the pioneer case in this court involving the subject of land reclamation in this connection, and but few cases have had the fortune to be approved by this court as frequently and unreservedly, or cited with more favor in other jurisdictions. The levee district had been chartered and organized under an act of the General Assembly approved March 2, 1855 (Laws 1855, p. 73), authorizing the assessment and collection of a flat tax of fifty cents per acre for the prosecution of the work contemplated. This amount was, by a subsequent act, raised to one dollar per acre and was, under the original act, to be levied by the directors of the corporation. As indicated by the extract quoted, the act was sustained by this court. It is safe to say that the doctrine is firmly established in this State that the Legislature, acting within its constitutional powers, may fix the territorial limits of special taxing districts, and may also fix the actual or maximum amount of special assessments, which it may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon a pro-

ceeding to ascertain the actual benefit accruing to each particular tract; or it may delegate any or all these powers to an appropriate agency to be chosen or created by it. [Little River Drainage District v. Railroad, supra; Columbia Bottom Levee Company v. Meier, supra; Meier v. St. Louis, 180 Mo. 391, 408, and cases cited; Mound City Land and Stock Company v. Miller, supra; St. Joseph to use v. Farrell, 106 Mo. 437; Prior v. Construction Co., 170 Mo. 439, 448, and cases cited.] When all this has been done by valid legislation, founded upon those principles of public expedience to which we have referred, "the owner of the property in the district cannot be heard to contend in the court that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment." [Meier v. St. Louis, supra; Prior v. Construction Co., supra.]

II. The section against the constitutionality of which, as a whole, this attack is made is as follows:

"As soon as any drainage district shall have been organized under order of the circuit court, and a board of supervisors are elected and qualified, such board of supervisors shall have the power and authority to levy upon each acre of land in the district, not to exceed twenty-five cents per acre, as a level rate, to be used for purpose of paying expenses of organization, for topographical and other surveys, for plans of drainage, for expenses of assessing benefits and damages and other incidental expenses which may be necessary before entering upon the main work of drainage. Any district which may have proceeded without such levy may, if in the opinion of its board of supervisors it be desirable to do so, make such level assessment for such purpose, and if such items of expense have already been paid in whole or in part from other sources, the surplus shall be paid into the general fund of the district, and such levy may be made although the work

proposed may have failed or have been found impractical.''

Up to the time of the passage of this provision in 1909, the Legislature, in dealing with this subject, acted upon the theory that a greater measure of justice would result from an intelligent attempt to ascertain the actual and comparative benefit that would result to each tract, than from any arbitrary method of assessment, and the original act was drawn on this plan. It was soon developed that in order to approximate the desired result, it was necessary that expensive preliminary work be done to develop the contour of the different tracts of land involved in the scheme with reference to the positions and levels available for the contemplated drainage. It was also thought that the feasibility of the entire enterprise might in some instances depend upon this information. In such cases it is evidently to the interest of all concerned that the facts should be ascertained at the earliest moment and with the least possible expenditure. In these respects the preliminary work was for the purpose of relieving those who should be found to receive the least benefit from the execution of the contemplated plan from an unjust burden, as well as to obtain such data that the cost might be imposed upon those who ought in equity to bear it. Those relieved would in this way become, to that extent, the real beneficiaries. It is not within our province to find fault with the legislative reasoning, and if it were, we doubt whether we could substitute a better or more equitable plan. The appellant attacks it because (1) no judicial finding of ''benefits'' is required by the law as a foundation for levying this assessment, and (2) that it *might* be developed by the work, and we must therefore assume it to be contemplated by the law, that there will be no resulting increment that, under the name of ''benefits,'' constitutes the only

Due Process
of Law.
Judicial
Finding.
constitutional support for this class of taxation. As to the first of these points, we have already seen that the question of benefits is primarily a legislative one. In this case, however, the Legislature has seen fit to entrust to the judicial department the establishment and territorial limitation of the benefit district in a proceeding in which the question whether or not each tract included will be benefited is directly involved. Having expressed its will as to the principles which should govern the distribution of these taxes upon the land so found to be benefited, the Legislature has left the necessary amount of the assessments to be ascer-· tained by the authorities of the district, as it leaves like questions of municipal taxation to its municipal agencies.

III. The second point stated is predicated upon, or at least strongly illustrated by, that clause of the section which provides that "such levy may be made although the work proposed may have failed or have been found impractical."
What is a
"Benefit."
Of this provision the appellant argues: "If those landowners to whom the drainage proceedings are in invitum can be compelled to pay this preliminary tax for drainage which, prior to the levy of the tax, had failed and been abandoned as impracticable, then they are made to pay, not on the principle of benefits, but simply to defray the expenses of a fruitless undertaking on the part of the State, and an undertaking in invitum as to them." This, it is claimed, would violate the several provisions of the State and National Constitutions designed for the protection of private property against the public. The case is not, however, so presented in the record. At the time of the filing of the petition the surveys had been made by the board of engineers constituted as provided by the statute, a plan of drainage reported

to and adopted by the board of supervisors, the commission for viewing the lands and assessing benefits and damages had been appointed and was then engaged in that work, and the tax had been levied and extended on the tax books in the hands of the collector of the revenue for the county in which the lands are situated. It was stipulated by the parties that the constitutionality of the section we have quoted is the only question in controversy; that if it is a valid and legal section under the State and Federal Constitutions the bill is to be dismissed; if not, judgment shall be entered accordingly. If the section is valid according to its terms its application to the facts of this case is not questioned.

We have already shown that the Legislature had the power to fix the boundaries of the district to be benefited by the work by referring the same to judicial ascertainment, and that, having done this, its power extended to the levy of a tax by special assessment upon the entire property of the district so ascertained to be benefited, to be distributed in such manner as, in the legislative judgment, would secure equality. It no longer lay in the mouth of the owner of the included property to deny that he was benefited to the extent of the burden so imposed, whether by a uniform assessment founded upon the unit of area, or by attempting to differentiate the peculiar conditions pertaining to each tract. In this case the Legislature combined the two, and in so doing was equally within its powers. The last clause of the section in dispute gives no warrant for the discontinuance of the work. It simply recognizes, as the court would recognize had it not been written, that after expensive preliminary work such enterprises may possibly be found unfeasible, and that unforeseen accidents or conditions either physical or financial frustrate the wisest plans.

Our sediment-carrying rivers may change their courses through their alluvial plains so that a scheme

founded upon conditions of this year may be entirely
unsuitable, as respects both cost and working details,
to the conditions of next year; or financial disaster
may sweep money from its ordinary channels so that
the excavation that was made yesterday may lie incom-
plete until obliterated by the floods of tomorrow. All
these things are in human contemplation and even
Justice is not so blind that she will not take notice of
them.

It is not to be contemplated that in such cases the
loss should be made to fall upon the individual whose
hands and head with infinite labor have accomplished
the details of plan and execution up to that point.
These things must be paid, and this case resolved it-
self into a question of raising money for such purpose
which may be concretely stated as follows: Is it
within the statutory powers of the Legislature, in
providing for a work of this character, to assess its
cost against the property to be benefited by its comple-
tion, so that payment shall be exacted from time to
time as it shall become necessary to expend the money
for its execution? It is plain that in answering this
question there can be no difference in principle re-
sulting from the character of the work, if any, already
completed when the collection is sought to be made;
for all work, whether purely preliminary or purely
constructive, is alike a necessary part of the whole.

Whether we consider the public interest in these
enterprises from the standpoint of public health or
material prosperity, they are alike local in their char-
acter in all those senses in which the sanitation and
traffic conveniences of the city are local to the munic-
ipality. The growth and prosperity of the city re-
sulting from these things are matters of great public
concern affecting the State at large. So the prosper-
ity and growth of the productive communities repre-
sented by its farms are equally matters of general pub-
lic concern. That concern is represented by the dif-

ference between a State composed of bogs and marshes not only unproductive but unhealthy, and a State in which the lands yield bountifully to the call of the husbandman, and breathe health instead of miasma. In a material sense improvements which produce those desirable changes find their first and most direct effect in the values of land. In the city, farms become lots, and their value is frequently multiplied by thousands; while in the reclamation districts we find localities where large bodies of land not worth the taxes, have, by reclamation, become very valuable. All these direct benefits may be foreseen and to some extent estimated in figures, and it is just that each community affected by them should take care of the local improvements that produce them, along the same lines that other municipal subdivisions of the State government take care of similar interests. These public enterprises differ from individual enterprises of the same character only in the element that the conditions in which they exist are such that the property of one can only be improved by expenditure that is of like advantage to many, but the political community having been substituted for the individual it is confronted with conditions requiring the same treatment, and its powers are sufficient to the task. The man who contemplates such an improvement, starting only with what an unaided eye tells him of the situation, determines that it will pay him to attempt to apply the remedy. He makes accurate surveys with plans and estimates, and finds it feasible and does the work, and every class of expense in carrying out the experiment from the time it existed in his mind alone, is a part of the cost of the completed enterprise. If at any time before the completion his work proves the enterprise to be impracticable, he has still accomplished in behalf of his land one of the things which he set out to do. He has demonstrated once for all either that the work is impracticable, or

that the conditions are not yet ripe for its accomplishment. If this result cannot be said to be a benefit, then every man who expends time or money in tentative experiment upon his land is justified only if he succeeds and has done nothing useful if he has failed.

Applying these principles to this case we find that the Legislature has designed an important public work and has found that its accomplishment will result in such benefit to the lands included in its scope as to justify the assessment of the entire cost as a special tax against them. That it has the power to do this is, as we have seen, no longer open to question. To accomplish the purpose it is necessary to pay for the property used and labor employed in the work and this can only be done by the proceeds of public taxation, and taxes, as we have already said, can only be levied for the accomplishment of a public purpose. The power to tax necessarily includes the power to raise the money in such time and manner as is necessary to accomplish the purpose for which the tax is levied. Were this not true the power would be an empty one existing only in impracticable theory and not in fact. These principles necessarily apply to every class of taxation, general and special. This whole question was necessarily before the court and decided in Corrigan v. Kansas City, 211 Mo. 608, in which a special tax was levied and sustained "for the purpose of maintaining, adorning, constructing, repairing and otherwise improving the parks, parkways, roads, boulevards or avenues" located in West Park District. This tax was an annual one designed to provide for future work and was held to be collectible.

It will hardly be disputed that the State might, out of its general revenues resulting from taxation, pay for the very preliminary work provided for in the section we are considering, or it might authorize the same to be paid out of the contingent fund of the

county as was done in State ex rel. v. Taylor, 224 Mo. 393. This can only be done because the purpose is a public one to which the proceeds of taxation may be lawfully applied. The public purpose which justifies this application can only be the promotion of the health and general welfare of the community by the betterment of the condition of its lands, and is of itself the same purpose upon which the power to impose the special assessment rests. It follows that in this respect it is a valid assessment.

IV. It is contended that the section in question is void because it creates a rule of taxation not in existence at the time the defendant drainage district was organized and the plaintiffs became members of it, and it is therefore retrospective as to them and impairs the obligation of a contract constituted by its charter. This question does not some within the terms of the stipulation under which the sole issue was tried upon the petition and demurrer. Instead of questioning the constitutionality of the law, it simply goes to its application to the facts of this case. We do not hesitate, however, to say that the charter of a public corporation does not constitute a contract with its members that the laws it was created to administer will not be changed; and the State is still at liberty, as to them and the corporation, to continue its efforts to improve its methods of taxation with respect to these subjects.

The judgment of the circuit court for Cape Girardeau county is affirmed.

PER CURIAM IN BANC.—The foregoing cause coming into Banc from Division One and being reheard there, the opinion of Brown, C., is adopted as the opinion of the court, Brown, J., concurring in the result, Bond, J., dissenting, and Faris, J., not sitting.